Scott D. Musoff
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
(212) 735-3000 (Telephone)
(212) 735-2000 (Facsimile)

*Attorneys for Defendants 9F Inc.,*
*9F Primasia Securities Limited*
*and Cogency Global Inc.*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                            :
CRAIG J. HOLLAND, Individually and On        :    2:21-cv-00948-MCA-MAH
Behalf of All Others Similarly Situated,     :
                                             :
                                             :    **ECF Case**
            Plaintiffs,                       :    **Electronically Filed**
                                             :
v.                                           :
                                             :
9F INC., LEI SUN, YANJUN LIN, YIFAN          :
REN, CHANGXING XIAO, FLYNN XUXIAN            :
HUANG, IVAN XU, JUNSHENG ZHANG,              :
WING HON CHEUNG, FANGXIONG GONG,             :
DAVID CUI, LEI LIU, SIU FUNG MING,           :
CREDIT SUISSE SECURITIES (USA) LLC,          :
HAITONG INTERNATIONAL SECURITIES             :
COMPANY LIMITED, CLSA LIMITED,               :
CHINA INVESTMENT SECURITIES                  :
INTERNATIONAL BROKERAGE LIMITED,             :
9F PRIMASIA SECURITIES LIMITED, and          :
COGENCY GLOBAL INC.,                         :
                                             :
            Defendants.                       :
                                             :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## REPLY MEMORANDUM OF LAW
## IN FURTHER SUPPORT OF DEFENDANTS' JOINT MOTION
## TO DISMISS THE AMENDED CLASS ACTION COMPLAINT

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...................................................................... ii

PRELIMINARY STATEMENT .................................................................1

ARGUMENT............................................................................................2

I.     PLAINTIFF FAILS TO PLEAD ANY MISREPRESENTATION ...............3

       A.     9F Fully Disclosed All Relevant Information And Risks ...................3

       B.     Plaintiff Fails To Plead That The Alleged Conduct Was Illegal ..........6

       C.     Plaintiff Fails To Plead The Alleged Conduct With Particularity ........9

II.    PLAINTIFF FAILS TO PLEAD SCIENTER .............................................11

III.   ALL OF PLAINTIFF'S CLAIMS FAIL FOR LACK OF CAUSATION ...13

IV.    PLAINTIFF LACKS STANDING FOR SECURITIES ACT CLAIMS......15

V.     PLAINTIFF FAILS TO ALLEGE THAT THE UNDERWRITER
       DEFENDANTS WERE NEGLIGENT ......................................................15

CONCLUSION .......................................................................................15

i

## TABLE OF AUTHORITIES

Page(s)

## CASES

*In re American Business Financial Services, Inc. Securities Litigation*,
No. 05-232, 2007 WL 81937 (E.D. Pa. Jan. 9, 2007) ....................................3

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).................................................................................10

*In re Axis Capital Holdings Ltd. Securities Litigation*,
456 F. Supp. 2d 576 (S.D.N.Y. 2006) ..........................................................6

*Bauer v. Prudential Financial, Inc.*,
Nos. 09-1120 (JLL), 09-1771(JLL), 2010 WL 2710443 (D.N.J. June
29, 2010)........................................................................................................3

*Caiafa v. Sea Containers Ltd.*,
331 F. App'x 14 (2d Cir. 2009)....................................................................15

*Caifornia. Public Employees' Retirement System v. Chubb Corp.*,
394 F.3d 126 (3d Cir. 2004)............................................................2, 10, 14

*In re Campbell Soup Co. Securities Litigation*,
No. 18-14385 (NLH/JS), 2020 WL 7022655 (D.N.J. Nov. 30, 2020)4, 5, 6, 9

*City of Pontiac Policemen's & Firemen's Retirement System v. UBS AG*,
752 F.3d 173 (2d Cir. 2014).........................................................................8

*City of Roseville Employees' Retirement System v. Horizon Lines, Inc.*,
442 F. App'x 672 (3d Cir. 2011)..................................................................13

*Dura Pharmaceuticals, Inc. v. Broudo*,
544 U.S. 336 (2005).....................................................................................13

*In re FBR Inc. Securities Litigation*,
544 F. Supp. 2d 346 (S.D.N.Y. 2008) ..........................................................6

*In re HEXO Corp. Securities Litigation*,
524 F. Supp. 3d 283 (S.D.N.Y. 2021) ..........................................................6

*Institutional Investors Group v. Avaya, Inc.*,
    564 F.3d 242 (3d Cir. 2009)............................................................................13

*In re Intelligroup Securities Litigation*,
    527 F. Supp. 2d 262 (D.N.J. 2007).......................................................... 12, 14

*Jones v. Bock*,
    549 U.S. 199 (2007)........................................................................................14

*In re Lehman Bros. Securities & ERISA Litigation*,
    Nos. 10 Civ. 6637(LAK), 09 MD 2017 (LAK), 2013 WL 3989066
    (S.D.N.Y. July 31, 2013) ..................................................................................7

*In re Lululemon Securities Litigation*,
    14 F. Supp. 3d 553 (S.D.N.Y. 2014), *aff'd*, 604 F. App'x 62 (2d Cir.
    2015). .............................................................................................................11

*In re Morgan Stanley Information Fund Securities Litigation*,
    592 F.3d 347 (2d Cir. 2010)..............................................................................9

*National Junior Baseball League v. Pharmanet Development Group Inc.*,
    720 F. Supp. 2d 517 (D.N.J. 2010)......................................... 8, 9, 12, 13, 14

*In re Providian Financial Corp. Seurities Litigation*,
    152 F. Supp. 2d 814 (E.D. Pa. 2001).......................................................8, 13

*SEC v. Jackson*,
    908 F. Supp. 2d 834 (S.D. Tex. 2012).............................................................7

*Shapiro v. UJB Financial Corp.*,
    964 F.2d 272 (3d Cir. 1992)..............................................................................3

*Sportscare of America, P.C. v. Multiplan, Inc.*,
    No. 2:10-4414, 2011 WL 589955 (D.N.J. Feb. 10, 2011) ...........................15

*In re Suprema Specialties, Inc.Securities Litigation*,
    438 F.3d 256 (3d Cir. 2006)........................................................................3, 15

*Takata v. Riot Blockchain, Inc.*,
    No. 18-02293 (FLW), 2020 WL 2079375 (D.N.J. Apr. 30, 2020)...............12

*Trustees of the University of Pennsylvania v. St. Jude Children's Research Hospital*,
940 F. Supp. 2d 233 (E.D. Pa. 2013)...........................................................14

*Vanderhoef v. China Auto Logistics Inc.*,
No. 18-cv-10174, 2021 WL 3260849 (D.N.J. July 30, 2021) ................12, 13

## PRELIMINARY STATEMENT

The Opposition confirms the Complaint's failure to allege a misrepresentation based on the Company's so-called "illegal and secret" arrangement with PICC.[1] All but ignoring the Opening Brief, Plaintiff fails to grapple with the fact that no such arrangement with PICC was *ever* revealed to the market. Indeed, the Complaint was and remains the only instance where any such an allegation was leveled against the Company—a claim based on words that Plaintiff himself inserted into 9F's public disclosures to manufacture a "revelation." Without any well-pled factual basis to claim that the Company engaged in illegal conduct, Plaintiff's claim based on 9F's alleged failure to disclose such conduct fails.

Plaintiff also fails to plead scienter. The Opposition acknowledges that, absent particularized facts showing Defendants' knowledge of information that contradicted their contemporaneous public statements, scienter is insufficiently pled as a matter of law. Because Plaintiff does not (and cannot) dispute that no such facts are alleged in the Complaint, his Exchange Act claims necessarily fail.

In addition, Plaintiff fails to plead causation—and negative causation is apparent on the face of the Complaint—because he cannot demonstrate that the 2019

---

[1] "Opposition" or "Opp." refers to Plaintiff's Opposition to Defendants' Joint Motion to Dismiss, ECF No. 38. Capitalized terms not defined herein have the meanings ascribed to them in the Memorandum of Law in Support of Defendants' Joint Motion to Dismiss, ECF No. 30-1 ("Opening Brief" or "Br.").

Annual Report revealed any new information to the market, or that his other "corrective disclosures" relate in any way to the alleged "illegal scheme" with PICC.

Finally, Plaintiff's failure to respond to arguments concerning the underwriters or otherwise identify any basis for stating claims against the underwriters compels dismissal of claims against them.

## ARGUMENT

Plaintiff fails to satisfy the heightened pleading burdens under the PSLRA and Rule 9(b), which apply to his Exchange Act claims and Securities Act claims because a "core theory of fraud permeates the entire [Complaint] and underlies all of [his] claims." *Cal. Pub. Emps.' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 160 (3d Cir. 2004). Indeed, the "linchpin of [the] action is . . . that Defendants knowingly and intentionally," *id.*, "***disguised***" an "***illegal and secret***" scheme in violation of Chinese law. (AC ¶¶ 4, 67.) The Securities Act section of the Complaint explicitly alleges that the Offering Documents failed to disclose that "9F used PICC as a conduit ***to circumvent Chinese laws***," and "***disguised*** [service fees] as insurance premiums." (*Id.* ¶¶ 64–67.) Moreover, his Section 10(b) claim is expressly based on "each and every allegation" in the Securities Act section. (*Id.* ¶ 115.) Plaintiff alleges no independent facts to show fraud for his Section 10(b) claim.

The Complaint's passing and formalistic references to "negligence" and boilerplate disclaimers of fraud cannot alter this conclusion. *See Chubb*, 394 F.3d

2

at 160 ("[A] one-sentence disavowment of fraud . . . is insufficient.").  In fact, the word "negligently" appears just *once* in the Complaint, and the Complaint is bereft of any non-conclusory allegations that the Offering Documents were "negligently prepared."  (AC ¶ 63.)  "It would be unreasonable to infer a negligence cause of action from this fleeting and obscure reference."  *Shapiro v. UJB Fin. Corp.*, 964 F.2d 272, 288 n.18 (3d Cir. 1992).  In any event, Plaintiff's Securities Act claims fail even under Rule 8.[2]

## I.    PLAINTIFF FAILS TO PLEAD ANY MISREPRESENTATION

### A.    9F Fully Disclosed All Relevant Information And Risks

The Complaint should be dismissed because 9F fully and accurately disclosed changes to its direct lending business in response to Chinese regulatory changes (Br. at 15–20), including that the Company "*stopped charging service fees from borrowers since April 2019*" and "*currently charge[s] service fees from financial institutional partners*" (Ex. A at 35), such as PICC, which "provide insurance and guarantee protection to our investors" (*id.* at 15).

---

[2]    Plaintiff's cases are inapposite.  *See, e.g.*, *In re Am. Bus. Fin. Servs., Inc. Sec. Litig.*, No. 05-232, 2007 WL 81937, at *6 (E.D. Pa. Jan. 9, 2007) (plaintiffs "do not attribute any fraudulent conduct to" defendants); *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 274 (3d Cir. 2006) ("[D]efendant stands accused of nothing more than negligence"); *Bauer v. Prudential Fin., Inc.*, Nos. 09-1120 (JLL), 09-1771(JLL), 2010 WL 2710443, at *4 (D.N.J. June 29, 2010) (Section 11 claim "is based solely on claims of strict liability and/or negligence").

Plaintiff argues this language was inadequate because it purportedly did not "reveal[] that 9F and PICC entered into a secret agreement that provided that 95% of the funds that PICC collected disguised as insurance premiums were, in fact, loan facilitation service fees that PICC would remit to 9F."  (Opp. at 24.)  Yet Plaintiff also claims that substantially similar language in the Company's 2019 Annual Report "reveal[ed] for the first time the illegal nature of 9F's partnership with PICC" (*id.* at 37):

> Since April 2019, the Group has stopped charging service fees directly to the borrowers under its direct lending program.  Instead, the Group started to charge service fee either directly to the institutional funding partners, or indirectly through third-party guarantee companies who provide guarantee services, or insurance company who provided credit insurance to the institutional funding partners on their loans to the borrowers.  (Ex. B at F-16.)

Contrary to Plaintiff's claim (Opp. at 14), on its face this disclosure does not say that 9F charged fees "disguised as insurance premiums from borrowers."  (Br. at 15–16.)  It merely repeats the Offering Documents' disclosure about changes to the Company's business model in response to changing regulations.  (*Compare* Ex. B at F-16 *with* Ex. A at 35.)  "Plaintiff[] did not respond to this argument in [his] opposition and thus ha[s] waived this theory."  *In re Campbell Soup Co. Sec. Litig.*, No. 18-14385 (NLH/JS), 2020 WL 7022655, at *5 n.2 (D.N.J. Nov. 30, 2020).

Attempting to improperly shift his pleading burden, Plaintiff argues that "if the market were truly aware of the information . . . Defendants cannot explain the

4

drop in the Company's ADS price after the information was disclosed."  (Opp. at 25.)  But Defendants have no obligation to provide such an explanation on a motion to dismiss.  Worse still, the Opposition suggests that the drop was due, not to the "revelation" of the Company's alleged "illegal" scheme with PICC, but to investors' disappointment at the Company's loss of revenue, negating loss causation on the face of the Complaint.  (Opp. at 7–8.)[3]

Next, Plaintiff asserts that the Offering Documents' purported failure to "inform ***borrowers*** that 9F secretly charged large amounts of insurance premiums from loan principals" constitutes an actionable omission.  (Opp. at 24.)  But, as the Opening Brief highlighted (Br. at 18) and the Opposition ignores, the federal securities laws concern the Company's disclosures to its ***investors*** and do not provide a cause of action for Plaintiff's allegation that loan ***borrowers*** in China were inadequately informed.  In any event, the Opposition also ignores that Plaintiff's own sources show that borrowers were required to "confirm" the amount of insurance premiums before taking out loans on 9F's platform.[4]  (Br. at 30 n.7; Ex. K

---

[3]  The Complaint admits (and the Opposition does not dispute) that 9F warned of the risk of a future dispute with PICC.  (Ex. A at 43; AC ¶ 64; Br. at 17–18.)

[4]  The Opposition similarly does not respond to (and thus concedes) Defendants' argument that 9F warned "there is no clearly defined and official method for calculating annual interest and fee rates," (Ex. A at 33), and that 9F did not include insurance premiums in calculating the 36% rate cap under the applicable regulations.  (Br. at 16–17.)  *See Campbell*, 2020 WL 7022655, at *5 n.2.

at 4, 6.)[5]

## B.   Plaintiff Fails To Plead That The Alleged Conduct Was Illegal

Even if 9F did what Plaintiff alleges, Plaintiff fails to explain "how what defendants [allegedly] did constituted the alleged violation." *In re FBR Inc. Sec. Litig.*, 544 F. Supp. 2d 346, 354 (S.D.N.Y. 2008). The Opposition does not respond to numerous pleading deficiencies identified in the Opening Brief, including its failure to allege facts to show that (i) *insurance companies* like PICC, as opposed to online lending platforms like 9F, are subject to the 2019 Notice or are otherwise prohibited from charging fees to borrowers; (ii) the 36% regulatory rate cap applies to insurance premiums like those charged by PICC; and (iii) the **post-IPO** dispute between 9F and PICC related to the alleged "illegal" arrangement between 9F and PICC, as opposed to some other disagreements between the contracting parties. (Br. at 20–23.) Absent these allegations, Plaintiff fails to plead the claimed illegality that is at the core of his case. *In re Axis Cap. Holdings Ltd. Sec. Litig.*, 456 F. Supp. 2d

---

[5]   As shown in the Opening Brief, 9F's disclosures foreclose Plaintiff's Items 105 and 303 claims. (Br. at 19 n.5.) Plaintiff's attempts to distinguish Defendants' cases miss the point. (Opp. at 23 n.2.) These cases confirm that, where, as here, 9F "*did* disclose known risks," Plaintiff's claims under Items 105 or 303 fail. *In re HEXO Corp. Sec. Litig.*, 524 F. Supp. 3d 283, 302–03 (S.D.N.Y. 2021) (dismissing Item 105 *and* 303 claims). Plaintiff does not dispute that 9F had no duty under Items 105 or 303 to disclose "uncharged, unadjudicated wrongdoing" and that Plaintiff fails to plead facts to show that the Company "knew" of the alleged "illegal scheme" or explain why such "knowledge" should be imputed to the Company. (Br. at 19 n.5.) *See Campbell*, 2020 WL 7022655, at *5 n.2.

6

576, 585 (S.D.N.Y. 2006) ("If the complaint fails to allege facts which would establish such an illegal scheme, then the securities law claims premised on the *nondisclosure* of the alleged scheme are fatally flawed.").

Instead of confronting these deficiencies, the Opposition regurgitates other irrelevant allegations. For example, Plaintiff points to a penalty notice against PICC—***not 9F***—for violations of certain unknown Chinese regulations. (Opp. at 25–26.) However, Plaintiff does not allege that ***9F*** was subject to any regulatory action or inquiry; nor does he argue that the regulations PICC was accused of violating—which he does not even identify—apply to 9F. *See SEC v. Jackson*, 908 F. Supp. 2d 834, 858–59 & n.15 (S.D. Tex. 2012) (dismissing complaint where factual predicate of claims depended on content of foreign law and plaintiff failed to plead the law at issue).

Similarly, Plaintiff continues to ignore the critical distinction, noted in the Opening Brief (Br. at 23), between the asserted ***invalidity*** (*i.e.*, unenforceability) of a contract and illegality of the underlying conduct. (Opp. at 26.) Plaintiff's inferential leap that 9F must have engaged in ***illegal*** conduct based on PICC's claim in a separate Chinese lawsuit that their agreement was "***invalid***" is a pleading technique that courts have rejected as rife with risk of abuse. *In re Lehman Bros. Sec. & ERISA Litig.*, Nos. 10 Civ. 6637(LAK), 09 MD 2017 (LAK), 2013 WL 3989066, at *4 (S.D.N.Y. July 31, 2013) (noting "[t]he unfairness of permitting a

plaintiff in a separate action to rely blindly at the pleading stage primarily on . . . statements from another case to meet its pleading burden," as "[t]here is significant motive and opportunity for counsel in any case to misuse or mischaracterize [facts] in a pleading").[6]

Even if Plaintiff could plead illegality (he cannot), his claims nonetheless fail because Defendants have no duty to disclose "uncharged, unadjudicated wrongdoing." *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 184 (2d Cir. 2014) (citation omitted); *see Nat'l Junior Baseball League v. Pharmanet Dev. Grp. Inc.*, 720 F. Supp. 2d 517, 537 (D.N.J. 2010) ("Silence, absent a duty to disclose, is not misleading.") (citation omitted). The Opposition does not dispute this point and argues only that "[e]ven when there is no existing independent duty to disclose information, once a company speaks on an issue or topic, there is a duty to tell the whole truth." (Opp. at 25 n.3.) But this legal principle is of no help

---

[6] Because Plaintiff fails to plead that PICC claimed that its agreement with 9F was "illegal"—as opposed to merely "invalid" or unenforceable—he also cannot establish that any of the Company's post-IPO statements misleadingly omitted "that the dispute represented a materialized risk that PICC would claim the arrangement with 9F was illegal." (Opp. at 31.) *In re Providian Financial Corp. Securities Litigation*, 152 F. Supp. 2d 814 (E.D. Pa. 2001) (cited in Opp. at 26) highlights the insufficiency of his allegations, as plaintiffs there alleged defendant was investigated by "various government agencies," ordered to remediate, "pay restitution to certain account holders, and to pay various fines." *Id.* at 817. None of these things happened to 9F here, and even Plaintiff does not claim otherwise.

8

to Plaintiff because he does not even attempt to identify which of 9F's prior statements would give rise to such a duty and how 9F failed to meet it. (*Id.*) Moreover, as his own cited cases hold, (*id.*), the duty to make "complete and accurate disclosures" does "not trigger a generalized duty requiring defendants to disclose the entire corpus of their knowledge." *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 366 (2d Cir. 2010).

### C.    Plaintiff Fails To Plead The Alleged Conduct With Particularity

The Opposition does not respond to, and thus implicitly concedes, *Campbell*, 2020 WL 7022655, at *5 n.2, nearly all of Defendants' arguments that the Complaint fails to allege sufficient facts establishing the alleged conduct. (Br. at 23–31.) The Opening Brief demonstrated that: (i) the Complaint offers "nothing more than conclusory allegations that an [illegal] scheme existed," (Br. at 23–24 (quoting *Axis*, 456 F. Supp. 2d at 585)); (ii) Plaintiff's theory is belied by specific allegations in the Complaint and documents incorporated by reference (*id.* at 24, 27–29; *see* AC ¶¶ 51–56; Ex. J at 3); (iii) Plaintiff cannot establish that any challenged statement was false when made because he fails to allege when the alleged scheme took place (Br. at 24); (iv) his confidential source allegations present serious reliability concerns (*id.* at 25); (v) his sources are not described "with sufficient particularity to support the probability that a person in the position occupied by the source would possess the information alleged" (*id.* at 26–27 (citing *Pharmanet*, 720 F. Supp. 2d at 538–39));

(vi) *one* anecdotal incident of alleged misconduct "cannot support a fraud claim" (*id.* at 29–30 (quoting *In re Nice Sys., Ltd. Sec. Litig.*, 135 F. Supp. 2d 551, 577–78 (D.N.J. 2001)); and (vii) his accounting claims fail both because accurate recitations of past earnings "do not create liability under" the securities laws, (*id.* at 30 (quoting *Galati v. Com. Bancorp, Inc.*, 220 F. App'x 97, 102 (3d Cir. 2007)), and because Plaintiff fails to allege, as he must, "the reason or reasons why" the disclosures were misleading (*id.* at 30–31 (quoting *Chubb*, 394 F.3d at 144)).

Plaintiff's excuse for failing to engage with or to respond to these arguments is that he is not required to plead his Securities Act claims with particularity. (Opp. at 27.) That is incorrect (*see supra* at 2-3) but also beside the point. At least arguments (i)–(iii) above defeat Plaintiff's claims even under Rule 8. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009) ("Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."). Although Plaintiff insists that his allegations "are, in fact, particularized and are based upon detailed facts, including information from several confidential witnesses," and that "the confidential witnesses" were alleged "with sufficient particularity," (Opp. at 27–28), the Opposition offers nothing beyond these above *ipse dixit* assertions to explain why or how that is so. (*See* Br. at 24–28.)[7]

---

[7]    Plaintiff's argument regarding Borrower 3 fails, because as a matter of law and logic, a loan issued *after* the relevant statements *does not* "shed[] light on whether

## II.    PLAINTIFF FAILS TO PLEAD SCIENTER

Plaintiff also fails to plead scienter.  <u>First</u>, the Opposition does not dispute that allegations of generic motives possessed by all corporate directors and officers do not suffice.  (Br. at 32.)  Yet that is all he has alleged—Defendants were "all motivated by their own and the Company's financial interests."  (AC ¶ 32.)  While the Opposition baldly asserts that Defendants' "financial incentives to exaggerate earnings go far beyond the usual arrangements of compensation" (Opp. at 33), Plaintiff fails to explain how so and fails to identify any factual allegations in the Complaint that support such an assertion.

<u>Second</u>, Plaintiff does not respond to (and thus concedes) the argument that the Complaint fails to "specifically identify the reports or statements containing . . . information" that contradicted Defendants' contemporaneous public statements—a

---

class period statements were false" when made.  (Opp. at 28 n.5.)  *See In re Lululemon Sec. Litig.*, 14 F. Supp. 3d 553, 580 (S.D.N.Y. 2014), *aff'd*, 604 F. App'x 62 (2d Cir. 2015).  Without any analysis whatsoever, Plaintiff claims "Defendants' other factual disputes"—which he does not even identify—"are inappropriate for resolution on a motion to dismiss."  (Opp. at 28 n.5.)  Plaintiff is wrong.  All of Defendants' arguments at the pages he cites, (Br. at 29–31), including items (i), (vi) and (vii) above, establish that the Complaint is devoid of any well-pled factual allegations to state a claim—the ***precise*** question before this Court on a motion to dismiss.  (*See* Br. at 29 (conclusory allegations of Borrower 1 are belied by documents cited in Complaint); *id.* at 29–30 (***one*** incident of high premiums "cannot," as a matter of law, "support a fraud claim") (citing *Nice*, 135 F. Supp. 2d at 577–78); *id.* at 30–31 (accurate statements of past earnings do not state a securities law claim, and Plaintiff fails to allege "the reason or reasons" why the statements are misleading, as required under the PSLRA).)

11

prerequisite to pleading recklessness.  (Br. at 33 (quoting *In re Intelligroup Sec. Litig.*, 527 F. Supp. 2d 262, 286 (D.N.J. 2007).)  He also does not respond to the Opening Brief's arguments explaining why his theory of scienter "does not make sense on the facts alleged, let alone present a cogent or compelling" theory of scienter, as required to survive dismissal.  (Br. at 33–34.)

Nonetheless, Plaintiff argues that his allegations of (i) GAAP violations; (ii) confidential witness accounts; (iii) officer resignations; and (iv) the importance of the alleged fraud to 9F's core business are sufficient to establish recklessness.  (Opp. at 34–35.)  As a threshold matter, the Complaint did not purport to rely on the core business doctrine, and it "may not be amended by the briefs in opposition to a motion to dismiss."  *Takata v. Riot Blockchain, Inc.*, No. 18-02293 (FLW), 2020 WL 2079375, at *16 (D.N.J. Apr. 30, 2020) (citation omitted).  In any event, these allegations, whether viewed individually or holistically, are insufficient.  Plaintiff's own cases confirm that "GAAP violations [and] executive . . . resignations . . . may not *alone* support an inference" of scienter.  *Vanderhoef v. China Auto Logistics Inc.*, No. 18-cv-10174, 2021 WL 3260849, at *5 (D.N.J. July 30, 2021).  Moreover, courts have uniformly held that "Plaintiff cannot rely on [the core business] doctrine when it has failed to allege other individualized allegations that [defendants] had knowledge of the facts at issue," which Plaintiff has failed to do.  *Pharmanet*, 720 F. Supp. 2d at 556.  (*See* Br. at 33.)  Confidential witness allegations likewise cannot

12

support a strong inference of scienter where, as here, "not one witness claims to have met, emailed with, spoken to, or otherwise heard or read anything by, [any] of the Individual Defendants."[8]  *Pharmanet*, 720 F. Supp. 2d  at 555; *see City of Roseville Emps.' Ret. Sys. v. Horizon Lines, Inc.*, 442 F. App'x 672, 675 (3d Cir. 2011).

## III.    ALL OF PLAINTIFF'S CLAIMS FAIL FOR LACK OF CAUSATION

Plaintiff also fails to plead "a causal connection between the material misrepresentation and the loss."  *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342 (2005).  The Complaint makes clear that the "material misrepresentation" that forms the basis of all of his claims is 9F's "fail[ure] to disclose th[e] secret arrangement [with PICC] and its associated material risk."  (AC ¶ 5; *see id.* ¶¶ 64–67, 100–02.)

Critically, the Opposition does not dispute that three of his alleged "corrective disclosures" made on June 17, June 22, and September 29, 2020 do not even ***mention*** the alleged "secret arrangement" with PICC.  (Br. at 35–37.)  Plaintiff argues that he "need only allege that the market was able to infer from the[se] corrective disclosure[s] that the misrepresentation at issue had occurred."  (Opp. at 38.)  But

---

[8]  In contrast, Plaintiff's cases involved particularized allegations to bolster the theories on which Plaintiff attempts to rely.  *See, e.g.*, *Vanderhoef*, 2021 WL 3260849, at *4 (GAAP violations and resignations bolstered by particularized facts that defendants knew of related-party transactions and "actively obstructed the Investigation and misled the public regarding their intention to cooperate"); *Institutional Invs. Grp. v. Avaya, Inc.*, 564 F.3d 242, 263 (3d Cir. 2009) (complaint alleged "the time period during which the CWs acquired the relevant information, and how each CW had access to such information"); *Providian*, 152 F. Supp. 2d at 825 (defendants received information showing misconduct).

unlike the cases he cites, (*id.*), Plaintiff ***does not allege*** how these disclosures could have allowed investors to infer that there was an alleged "secret arrangement" with PICC. (AC ¶ 5.) His "failure to allege an actual link" between these disclosures and the alleged misrepresentation is fatal to his claim. *Intelligroup,* 527 F. Supp. 2d at 328.

Plaintiff mischaracterizes the 2019 Annual Report as supposedly revealing that "'PICC collected all of the loan facilitation service fees' ***from borrowers***." (Opp. at 37.) But as demonstrated above and in the Opening Brief, the key words "from borrowers" do not appear anywhere in the Company's filing. (Ex. B at F-16.)[9] Moreover, Plaintiff's allegation that "[g]iven that PICC's withholding of 9F's loan facilitation service fees accounted for ***29.9% of lost revenue*** in 2019, ***the market strongly reacted to 9F's revelation***," (Opp. at 7–8), effectively concedes that the alleged "corrective disclosure" "merely lower[ed] revenue expectations, which is not a disclosure of an alleged scheme." *Pharmanet*, 720 F. Supp. 2d at 562.[10]

---

[9]  Plaintiff claims that Defendant's negative causation "affirmative defense may not be used to dismiss a plaintiff's [Securities Act claims]." (Opp. at 29 n.6 (quoting *In re Adams Golf, Inc. Sec. Litig.*, 381 F.3d 267, 277 (3d Cir. 2004).) But as courts in this Circuit have recognized, the Supreme Court made clear ***after*** *Adams* that "an affirmative defense may form the basis for dismissal on a 12(b)(6) motion," *Trs. of the Univ. of Pa. v. St. Jude Children's Rsch. Hosp.*, 940 F. Supp. 2d 233, 241 (E.D. Pa. 2013), so long as "the basis for dismissal . . . depends on whether the allegations in the complaint suffice to establish that ground," *Jones v. Bock*, 549 U.S. 199, 215 (2007).

[10]  Because Plaintiff fails to plead a primary violation, his claims for control person liability fail. *Chubb*, 394 F.3d at 159 n.21.

14

## IV.    PLAINTIFF LACKS STANDING FOR SECURITIES ACT CLAIMS

Plaintiff's argument that standing cannot be established without discovery fails.  (Opp. at 40 n.9.)  Unlike in *Suprema*, where "it [was] impossible for plaintiffs to know whether their shares were newly issued or were purchased in the secondary market" prior to discovery, 438 F.3d at 274 n.7, here, Plaintiff's own certification (ECF No. 9-2 at 8) "confirms that [he] acquired the securities in a secondary market." *Caiafa v. Sea Containers Ltd.*, 331 F. App'x 14, 16 (2d Cir. 2009) (no standing where certifications showed plaintiffs purchased in secondary market).  This independently warrants dismissal of Plaintiff's Securities Act claims.

## V.    PLAINTIFF FAILS TO ALLEGE THAT THE UNDERWRITER DEFENDANTS WERE NEGLIGENT

Finally, Plaintiff did not respond to the underwriters' argument that the Complaint lacks any non-conclusory allegation that the underwriters were at least negligent in failing to uncover the purported misrepresentations.  This failure requires the dismissal of claims against the underwriters.  *See Sportscare of Am., P.C. v. Multiplan, Inc.*, No. 2:10-4414, 2011 WL 589955, at *1 (D.N.J. Feb. 10, 2011) ("In most circumstances, failure to respond in an opposition brief to an argument put forward in an opening brief constitutes waiver or abandonment[.]").

<u>**CONCLUSION**</u>

For the reasons above and in the Opening Brief, the Court should dismiss the Complaint in its entirety with prejudice.

15

Dated:        April 18, 2022

Respectfully submitted,

SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP


 /s/ Scott D. Musoff
Scott D. Musoff
(scott.musoff@skadden.com)
Robert A. Fumerton
(robert.fumerton@skadden.com)
Michael C. Griffin
(michael.griffin@skadden.com)
One Manhattan West
New York, NY 10001
Telephone:      (212) 735-3000
Facsimile:      (212) 735-2000

*Attorneys for Defendant 9F Inc.,*
*9F Primasia Securities Limited*
*and Cogency Global Inc.*

DUGHI, HEWIT & DOMALEWSKI,
P.C.

/s/ Craig A. Domalewski
Craig A. Domalewski
340 North Avenue
Cranford, New Jersey 07016
Telephone: 908-272-0200

CAHILL GORDON & REINDEL LLP

/s/ David Januszewski
David Januszewski
Sheila Ramesh
32 Old Slip
New York, NY 10005

Telephone:  212-701-3000
212/269-5420 (fax)

*Attorneys for Defendants Credit Suisse*
*Securities (USA) LLC*

# CERTIFICATION OF SERVICE

I hereby certify that a copy of the foregoing was filed electronically with the United States District Court for the District of New Jersey through the Court's ECF System on this date.  The Notice of Electronic Filing constitutes service on all parties under Rule 14(b)(1) of this Court's ECF Policies and Procedures listed in Local Civil Rule 5.2.

Dated: April 18, 2022

/s/ Scott D. Musoff
Scott D. Musoff