# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| CRAIG J. HOLLAND, Individually and on behalf of all others similarly situated,<br><br><br>Plaintiff,<br><br><br>v.<br><br>9F INC., LEI SUN, YANJUN LIN, YIFAN REN, CHANGXING XIAO, FLYNN XUXIAN HUANG, IVAN XU, JUNSHENG ZHANG, WING HON CHEUNG, FANGXIONG GONG, DAVID CUI, LEI LIU, SIU FUNG MING, CREDIT SUISSE SECURITIES (USA) LLC, HAITONG INTERNATIONAL SECURITIES COMPANY LIMITED, CLSA LIMITED, CHINA INVESTMENT SECURITIES INTERNATIONAL BROKERAGE LIMITED, 9F PRIMASIA SECURITIES LIMITED, and COGENCY GLOBAL INC.,<br><br>Defendants. | Case No: 2:21-cv-00948-MCA-MAH<br><br>**PLAINTIFFS' OPPOSITION TO CLSA HONG KONG'S MOTION TO DISMISS THE SECOND AMENDED CLASS ACTION COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(4) AND 12(B)(5)** |

# **TABLE OF CONTENTS**

I.    INTRODUCTION ..................................................................................1

II.   STANDARD OF REVIEW .................................................................3

III.  THE COURT SHOULD DENY CLSA LIMITED'S MOTION.....................5

      A.    CLSA Limited Has Waived Any Challenge to Personal Jurisdiction and Venue By Failing to Invoke Rules 12(b)(2) and 12(b)(3) in Its Motion .......................................................................5

      B.    Service Was Proper Because CLSA Americas Was Either Established for, or is Engaged in, Activities That But for the Existence of CLSA Americas, CLSA Limited Would Have to Undertake for Itself............7

      C.    CLSA Limited's Arguments to the Contrary Fail ...............................12

IV.   ALTERNATIVELY, IF THE COURT WERE TO DETERMINE THAT SERVICE WAS INEFFECTIVE (AND IT WAS NOT), THE COURT SHOULD PERMIT PLAINTIFFS TO EFFECT SERVICE .........................17

V.    CONCLUSION....................................................................................18

i

# TABLE OF AUTHORITIES

CASES

*Affinity Labs of Texas, LLC v. Nissan N. Am. Inc.*
    No. 13-CV-369, 2014 WL 11342502 (W.D. Tex. July 2, 2014)...........................15

*AIG Managed Mkt. Neutral Fund v. Askin Cap. Mgmt., L.P.*,
    197 F.R.D. 104 (S.D.N.Y. 2000).......................................................................13

*Allen Organ Co. v. Kawai Musical Instruments Mfg. Co.*,
    593 F. Supp. 107 (E.D. Pa. 1984)..................................................................11, 13

*Broschart v. Husqvarna AB*,
    No. CV2018795MASLHG, 2021 WL 3269664 (D.N.J. July 30, 2021)..............15

*Bravetti v. Liu*,
    No. 3:12-CV-7492-MAS-TJB, 2013 WL 6501740 (D.N.J. Dec. 11, 2013).........14

*Bright v. Tyson*,
    No. 15-8038, 2016 WL 3219876 (D.N.J. June 6, 2016) ....................................18

*Brown v. China Integrated Energy Inc.*,
    285 F.R.D. 560 (C.D.Cal.2012)..........................................................................14

*Bulova Watch Co. v. K. Hattori & Co.*,
    508 F. Supp. 1322 (E.D.N.Y. 1981)......................................................8, 9, 10, 11

*Const. Guided Walking Tours, LLC v. Indep. Visitor Ctr. Corp.*,
    804 F. Supp. 2d 320 (E.D. Pa. 2011) ....................................................................4

*Coulter v. U.S. Dep't of Homeland Sec.*,
    No. CIV.A.07-4894JAG, 2009 WL 3068395 (D.N.J. Sept. 23, 2009).................17

*Dartell v. Tibet Pharms., Inc.*,
    No. CV 14-3620, 2017 WL 1206003 (D.N.J. Mar. 31, 2017)....................... 16, 17

*Dewey v. Volkswagen AG*,
    558 F. Supp. 2d 505 (D.N.J. 2008)......................................................................12

*Emekekwue v. Offor*,
   No. 1:11-CV-01747, 2012 WL 5249414 (M.D. Pa. Oct. 24, 2012) ...................6, 7

*Foote v. Valenti Mid Atl. Mgmt., LLC*,
   No. CV 18-2244, 2019 WL 266294 (E.D. Pa. Jan. 18, 2019)......................... 4, 12

*Gallagher v. Mazda Motor of Am., Inc.*,
   781 F. Supp. 1079 (E.D. Pa. 1992) ......................................................................8

*Gapanovich v. Komori Corp.*,
   255 N.J. Super. 607 (App. Div. 1992) ................................................................12

*Garlanger v. Verbeke*,
   223 F. Supp. 2d 596 (D.N.J. 2002) ....................................................................17

*Gutierrez v. Medtronic plc*,
   No. CV225573SDWMAH, 2023 WL 376014 (D.N.J. Jan. 5, 2023)...................15

*In re Comverse Tech., Inc. Sec. Litig.*,
   543 F. Supp. 2d 134 (E.D.N.Y. 2008).......................................................... 15, 17

*In re Fairfield Sentry Ltd.*
   No. 10-13164 (SMB), 2020 WL 7345988 (Bankr. S.D.N.Y. Dec. 14, 2020) ......16

*In re TK Holdings*,
   No. AP 20-51004-BLS, 2021 WL 3796878 (D. Del. Aug. 26, 2021) ..................14

*Indagro, S.A. v. Nilva*,
   No. 07-CV-03742 SDW MCA, 2014 WL 1515587 (D.N.J. Apr. 17, 2014) ........12

*Ingris v. Drexler*,
   No. CIV.A. 14-2404 ES, 2014 WL 7271905 (D.N.J. Dec. 17, 2014) ..................15

*K. J. Schwartzbaum, Inc. v. Evans, Inc.*,
   44 F.R.D. 589 (S.D.N.Y. 1968).................................................................11, 12, 13

*Leyse v. Bank of Am. Nat. Ass'n*,
   804 F.3d 316 (3d Cir. 2015)..................................................................................6

*Manning v. Hudson Cty.*,
   No. 17-3450, 2018 WL 3601228 (D.N.J. July 27, 2018) ......................................17

*Mirrow v. Club Med, Inc.*,
   118 F.R.D. 418 (E.D. Pa. 1986)...................................................................7, 8, 11

*Myers v. Am. Dental Ass'n*,
   695 F.2d 716 (3d Cir. 1982)...................................................................................6

*Negron v. Sch. Dist. of Phila.*,
   994 F. Supp. 2d 663 (E.D. Pa. 2014)....................................................................6

*Pell v. Azar Nut Co.*,
   711 F.2d 949 (10th Cir. 1983)..............................................................................17

*RCC Ventures, LLC v. Brandtone Holdings Ltd.*,
   322 F.R.D. 442 (S.D.N.Y. 2017)..........................................................................15

*Ross v. AARP Servs., Inc.*,
   No. CV 1:19-57, 2022 WL 4598873 (D.V.I. Sept. 29, 2022)................................6

*Signs by Tomorrow-USA, Inc. v. G.W. Engel Co.*,
   No. CIV. 05-4353 RBK, 2006 WL 2224416 (D.N.J. Aug. 1, 2006) ....................15

*Silicon Power Corp. v. Gen. Elec. Zenith Controls, Inc.*,
   No. CIV. A. 08-4331, 2009 WL 1971390 (E.D. Pa. July 7, 2009).........................4

*Target Glob. Logistics Servs., Co. v. KVG, LLC*,
   No. 5:15-CV-04960, 2015 WL 8014752 (E.D. Pa. Dec. 3, 2015) .........................4

*Turick by Turick v. Yamaha Motor Corp., USA*,
   121 F.R.D. 32 (S.D.N.Y. 1988)............................................................................15

*Umbenhauer v. Woog*,
   969 F.2d 25 (3d Cir. 1992)..................................................................... 5, 12, 17

*West v. Am. Honda Motor Co.*,
   No. CIV.A. 08-0700 (NLH), 2008 WL 4104683 (D.N.J. Aug. 28, 2008)............15

*World-Wide Volkswagen Corporation v. Woodson,*
  444 U.S. 286 (1980) ...............................................................................................13

RULES

Fed. R. Civ. P. 4........................................................................................................4

Fed. R. Civ. P. 12.......................................................................... *passim*

## I.     INTRODUCTION

This is a securities class action on behalf of purchasers of 9F's American Depositary Shares ("ADSs") from August 14, 2019 to September 29, 2020 ("Class Period").  Plaintiffs bring claims pursuant to the Securities Act of 1933 for all purchasers of 9F ADSs pursuant or traceable to the Registration Statement and Prospectus issued for 9F's initial public offering (collectively the "Registration Statement") held on or about August 14, 2019 ("IPO"), and the Securities Exchange Act of 1934 for all purchasers of 9F ADSs during the Class Period.

Among other things, Plaintiffs allege that 9F's Registration Statement was false and misleading because it failed to disclose that: (1) the borrowing cost for a borrower on 9F's platform frequently exceeded the 36% APR ceiling contrary to the representations in the Registration Statement; (2) through a partnership with Property and Casualty Company Limited ("PICC"), an arrangement existed whereby PICC would pay 9F service fees from the insurance premiums PICC collected from borrowers; (3) due to the arrangement with PICC, 9F was facing a material risk that PICC would claim that the arrangement was invalid because 9F used PICC as a conduit to circumvent regulatory bans on collecting fees from borrowers over 36% for fees and interest; and (4) as a result, there was a material risk that PICC would seize all the funds that 9F transferred from borrowers to PICC.  Defendant CLSA

1

Limited served as an underwriter for 9F's IPO.[1]

CLSA Americas, LLC ("CLSA Americas") – which CLSA Limited describes as an "U.S. corporate affiliate" of CLSA Limited – admits that it received the original complaint and the First Amended Complaint ("FAC") in this action on February 2, 2023. Motion at 1, 3; *see also* Declaration of Ex Kano S. Sams II in Support of Plaintiffs' Opposition to CLSA Hong Kong's Motion to Dismiss the Second Amended Class Action Complaint Pursuant to Fed. R. Civ. P. 12(B)(4) and 12(B)(5) ("Sams Declaration") Exhibit ("Ex.") 1. Nevertheless, CLSA Limited filed its Motion claiming that Plaintiffs' service was insufficient. The Court should deny the Motion for several reasons.

First, although CLSA Limited purportedly denies that it is subject to personal jurisdiction or venue in this Court, (Motion at 1), it did not invoke Rule 12(b)(2) or 12(b)(3) of the Federal Rules of Civil Procedure in its Motion to challenge personal jurisdiction or venue. As demonstrated below, CLSA Limited's failure to do so waives its right to challenge these issues.

Second, the service the Plaintiffs effected on February 2, 2023, was proper because CLSA Americas was either established for, or is engaged in, activities that

---

[1]    CLSA Limited refers to itself in its Motion to Dismiss the Second Amended Class Action Complaint Pursuant to Fed. R. Civ. P. 12(B)(4) and 12(B)(5) ("Motion") as "CLSA Hong Kong." Because CLSA Limited refers to itself as CLSA Limited in the filings referenced below with the Securities and Exchange Commission, Plaintiffs will use such reference.

but for the existence of CLSA Americas, CLSA Limited would have to undertake for itself. Indeed, as demonstrated below, CLSA Americas executes orders for CLSA Limited, earns execution fees for such orders, and has made millions of dollars acting on behalf of CLSA Limited within this forum. As shown by the authorities below, this conduct demonstrates that CLSA Limited has availed itself of the privilege of conducting business in this forum through CLSA Americas such that service upon CLSA Americas was proper.

Third, without asserting that the service that Plaintiffs effected on CLSA Americas was untimely, CLSA Limited suggests that Plaintiffs delayed service. Motion at 9-13. CLSA Limited, however, fails to appreciate the unique procedural nature of securities class actions. Courts have recognized that because of the nature of securities class actions – which involve a lengthy lead-plaintiff process where no one party knows that it will have eventual responsibility for the class action until after certain procedural deadlines – delays involving service are often inherent in the nature of securities class action litigation.

For these reasons and those shown below, the Court should deny CLSA Limited's Motion.

## II.    STANDARD OF REVIEW

Rule 12(b)(4) of the Federal Rules of Civil Procedure provides that a defendant may move to dismiss a complaint for "insufficiency of process." Fed. R.

Civ. P. 12(b)(4). "This fairly rare defense concerns the form of the process rather than the manner or method of its service." *Target Glob. Logistics Servs., Co. v. KVG, LLC*, No. 5:15-CV-04960, 2015 WL 8014752, at *5 (E.D. Pa. Dec. 3, 2015).[2] "Therefore, [a] Rule 12(b)(4) motion is proper only to challenge noncompliance with the provisions of Rule 4(b) or any applicable provision incorporated by Rule 4(b) that deals specifically with the content of the summons." *Id*.; *see also Silicon Power Corp. v. Gen. Elec. Zenith Controls, Inc.*, No. CIV. A. 08-4331, 2009 WL 1971390, at *1 (E.D. Pa. July 7, 2009) (same).

"When evaluating a service issue under Fed. R. Civ. P. 4, courts must remain cognizant that Rule 4 is a flexible rule that should be liberally construed so long as a party receives sufficient notice of the complaint and technical defects do not justify dismissal unless a party is able to demonstrate actual prejudice." *Foote v. Valenti Mid Atl. Mgmt., LLC*, No. CV 18-2244, 2019 WL 266294, at *3 (E.D. Pa. Jan. 18, 2019); *see also Const. Guided Walking Tours, LLC v. Indep. Visitor Ctr. Corp.*, 804 F. Supp. 2d 320, 324 (E.D. Pa. 2011), *aff'd sub nom. Const. Guided Walking Tours v. Indep. Visitor Ctr. Corp.*, 454 F. App'x 118 (3d Cir. 2011) (same). By comparison, Rule 12(b)(5) allows for dismissal based on insufficient service of process. Fed. R. Civ. P. 12(b)(5).

---

[2] Unless otherwise indicated, all emphasis is added and all internal citations and quotations are omitted.

4

Additionally, CLSA Limited's Notice of Motion and Proposed Order improperly seek dismissal "with prejudice." The Third Circuit has declared, however, that any dismissal under Rules "12(b)(4) and 12(b)(5) must be entered *without* prejudice." *Umbenhauer v. Woog*, 969 F.2d 25, 30 n.6 (3d Cir. 1992). Additionally, "dismissal of a complaint is inappropriate when there exists a reasonable prospect that service may yet be obtained." *Id*. at 30.

## III.   THE COURT SHOULD DENY CLSA LIMITED'S MOTION

### A.   CLSA Limited Has Waived Any Challenge to Personal Jurisdiction and Venue By Failing to Invoke Rules 12(b)(2) and 12(b)(3) in Its Motion

Although CLSA Limited purportedly "denies that it is subject to personal jurisdiction or venue in this Court," (Motion at 1), it did not invoke Rule 12(b)(2) or 12(b)(3) of the Federal Rules of Civil Procedure in its Motion. CLSA Limited's failure to do so waives its right to challenge these issues.

Rule 12(g)(2) specifically states that "a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." Fed. R. Civ. P. 12(g)(2). Under Rule 12(h)(1), a defendant waives the defense of lack of personal jurisdiction by: (A) omitting it from a motion in the circumstances described in Rule 12(g)(2); or (B) failing to either: (i) make it by motion under this rule; or (ii) include it in a responsive pleading or in an amendment allowed by Rule 15(a)(1) as a matter

of course.  Fed. R. Civ. P. 12(h)(1).

Rule 12(g)(2) is "intended to eliminate unnecessary delay at the pleading stage by encouraging the presentation of an omnibus pre-answer motion in which the defendant advances every available Rule 12 defense simultaneously rather than interposing these defenses and objections in piecemeal fashion."  *Leyse v. Bank of Am. Nat. Ass'n*, 804 F.3d 316, 320 (3d Cir. 2015).  "Such a rule reflects a strong policy against tardily raising defenses that go not to the merits of the case but to the legal adequacy of the initial steps taken by the plaintiff in his litigation, namely his service of process on the defendant and his choice of forum for the action."  *Myers v. Am. Dental Ass'n*, 695 F.2d 716, 720 (3d Cir. 1982).  As one court aptly recognized:

> Defendants filed an initial motion to dismiss in this action in which they argued for dismissal pursuant to Fed.R.Civ.P. 12(b)(5) and (b)(6). Defendants could have, but did not, assert a defense pursuant to Fed.R.Civ.P. 12(b)(2). As such, the court finds defendants are now barred from raising their defense of lack of personal jurisdiction pursuant to Fed.R.Civ.P. 12(b)(2). *See Negron v. Sch. Dist. of Phila.*, 994 F. Supp. 2d 663, 666-67 (E.D. Pa. 2014) (finding that Rule 12(g)(2) prohibited the defendant from moving to dismiss a claim that was found in a prior challenged pleading because the new amended complaint "did not alter any of the factual allegations relevant to" that claim).

*Ross v. AARP Servs., Inc.*, No. CV 1:19-57, 2022 WL 4598873, at *4–5 (D.V.I. Sept. 29, 2022); *see also Emekekwue v. Offor*, No. 1:11-CV-01747, 2012 WL 5249414, at *3 (M.D. Pa. Oct. 24, 2012) ("Rule 12(g) requires a party who brings a Rule 12 motion to join all available Rule 12(b)(2)-(5) defenses in that motion.").  "[I]f a party

6

fails to raise any defense listed in Rule 12(b)(2)-(5) in their motion, Rule 12(h)(1) provides that those defenses are waived." *Emekekwue*, 2012 WL 5249414, at *3. "Moreover, a party who fails to raise personal jurisdiction as a defense in a Rule 12 motion is precluded from raising that defense in an answer or in a subsequent motion." *Id*. Thus, CLSA Limited has waived any challenge to personal jurisdiction or venue because it did not invoke Rule 12(b)(2) or 12(b)(3) in its Motion.

### B. Service Was Proper Because CLSA Americas Was Either Established for, or is Engaged in, Activities That But for the Existence of CLSA Americas, CLSA Limited Would Have to Undertake for Itself

The Court should deny CLSA Limited's Motion because CLSA Americas' contacts and conduct in this forum are imputed to CLSA Limited. Indeed, CLSA Americas was either established for, or is engaged in, activities that but for the existence of CLSA Americas, CLSA Limited would have to undertake itself. For instance, in *Mirrow v. Club Med, Inc.*, 118 F.R.D. 418 (E.D. Pa. 1986), the court held the following:

> Also important is the fact that in marketing the vacation packages, Club Med Sales performs a function that Club Med itself would otherwise have to perform. Club Med Sales provides travel agents in the United States with literature regarding Club Med vacations. The subsidiary receives payment for vacation packages, retains a commission, and forwards the balance to the operating companies. This aspect of the relationship between the two corporations distinguishes this case from *Akzona* and other cases in which a plaintiff serves a relatively autonomous manufacturing subsidiary as a means of serving a foreign conglomerate parent. Here, Club Med Sales effectively operates as the sales department in the United States for Club Med. . . . Under these

7

circumstances, I find that service as made by plaintiff upon Club Med Sales suffices to effectuate service upon defendant.

*Id.* at 419-20; *see also Gallagher v. Mazda Motor of Am., Inc.*, 781 F. Supp. 1079, 1085 (E.D. Pa. 1992) (holding that if a corporate entity uses another entity "to do what it otherwise would have done itself, it has purposely availed itself of the privilege of doing business in the forum" and jurisdiction "is therefore proper"); *Bulova Watch Co. v. K. Hattori & Co.*, 508 F. Supp. 1322, 1344 (E.D.N.Y. 1981) ("once solicitation is found in any substantial degree, very little more is necessary to support a conclusion of doing business through the in-state agent").

Such is the case here.  For instance, according to CLSA Americas' Statement of Financial Condition Pursuant to the Securities Exchange Act of 1934, Rule 17a-5, December 31, 2021 (With Independent Registered Public Accounting Firm's Report Thereon), CLSA Americas "executes orders for [CLSA] Limited," on which CLSA Americas "earns execution fees."  Sams Declaration, Ex. 2 at 12.  Additionally, during the year ended December 31, 2021, CLSA Americas:

> issued research invoices for $7,644[,000] on behalf of [CLSA] Limited for research services provided to [CLSA] Americas clients.  The payable of $1,553[,000] as of December 31, 2021, is netted in Receivables from affiliates.  During the year ended December 31, 2021, the Company issued retention invoices for $1,179[,000] on behalf of [CLSA] Limited for research services provided to [CLSA] Americas clients.  The payable of $243[,000] as of December 31, 2021, is netted in Receivables from affiliates.

> *Id.*

8

Additionally, CLSA Limited allocates expenses to CLSA Americas. *Id.* Specifically, CLSA Americas reported that "[c]ertain expenses of the Company incurred in the normal course of business are paid by [CLSA] Limited and other affiliates and reimbursed by the Company. The related payable of $72[,000] for such expenses are included net within Receivables from affiliates and receivable of $35[,000] is in Receivables to affiliates." *Id.*

Similarly, according to CLSA Americas' Statement of Financial Condition Pursuant to the Securities Exchange Act of 1934, Rule 17a-5, December 31, 2016 (With Independent Registered Public Accounting Firm's Report Thereon), CLSA Americas "executes orders for [CLSA] Limited" for securities listed on markets in North and South America on which CLSA Americas "earns execution fees." Sams Declaration, Ex. 3 at 9. "The related receivable of $139[,000] consisted of $53[,000] in receivables from affiliates, and $86[,000] netted in payable to affiliates." *Id.* Additionally, during the year ended December 31, 2016, CLSA Americas:

> collected or issued research invoices for $9,671[,000] of which $3,361[,000] was for research services provided by [CLSA] Limited. The payable of $843[,000] as of December 31, 2016, is included in payables to affiliates. The Company collected or issued retention invoices for $9,449[,000] of which $7,343[,000] was for research services provided by [CLSA] Limited. The payable of $1,832[,000] as of December 31, 2016, is included in payables to affiliates.

> *Id.* at 10.

Furthermore, "[CLSA] Limited acts as the collection agent for all payments for retention services from non-Americas-domiciled clients. This means certain amounts of funds received are payments for research services provided by [CLSA Americas]." *Id*.

Moreover, CLSA Limited allocated expenses to CLSA Americas. *Id*. at 9. Specifically, CLSA Americas reported that "[c]ertain expenses of the Company incurred in the normal course of business are paid by [CLSA] Limited and other affiliates. The related payable of $26[,000] is included payables to affiliates. The Company allocates expenses to [CLSA] Limited . . . in accordance with [Service Level Agreements]." *Id*.

In addition, according to CLSA Americas' Statement of Financial Condition Pursuant to the Securities Exchange Act of 1934, Rule 17a-5, December 31, 2013 (With Independent Registered Public Accounting Firm's Report Thereon), CLSA Americas "executes orders for [CLSA] Limited . . . on which it earns execution fees." Sams Declaration, Ex. 4 at 8. CLSA Americas acknowledged in the filing that it had "entered into Service Level Agreements with [CLSA] Limited . . . as to which the Company [CLSA Americas] provides sales and marketing services to US clients. Receivables from affiliates as of December 2013 included net balance of $77[,000] due to affiliates for these services." *Id*. CLSA Americas stated further:

> The Company [CLSA Americas] acts as the collection agent associated with payments for research from US clients. As such, certain amounts

of funds received are payments for research of other CLSA entities. During the year ended December 31 2013 the Company collected or issued invoices for $5,020[,000] of which $3,156[,000] was remitted to [CLSA] Limited. Payable to affiliates as of December 31 2013, included net balance of $578[,000].

*Id*.

A determination that the activities of CLSA Americas allow the Court to hold that service was proper "is buttressed by the fact that the cause of action alleged here is integrally related to the doing of business by [CLSA Limited] within the state." *Bulova*, 508 F. Supp. at 1344.[3]  Indeed, "[t]his appears to be a classic example of a company which, rather than sending its own agents into an area in furtherance of the business purposes of its enterprise, has formally created a seemingly independent subsidiary to accomplish that end." *K. J. Schwartzbaum, Inc. v. Evans, Inc.*, 44 F.R.D. 589, 592 (S.D.N.Y. 1968).  Accordingly, "***a corporation which conducts its business activities in a certain District and profits from those activities conducted therein should not be immune from the jurisdiction of that District's courts of law solely on the basis of the formal design which the corporation has structured for its organization***."  *Id*.  Thus, service upon CLSA Americas was proper.[4]

---

[3]  Because of the intensely factual nature of such a determination, some courts have permitted jurisdictional discovery to develop the analysis.  *Mirrow*, 118 F.R.D. at 419; *Allen*, 593 F. Supp. at 108.

[4]  Although CLSA Limited cites to *Dewey v. Volkswagen AG*, 558 F. Supp. 2d 505 (D.N.J. 2008), *Dewey* supports Plaintiffs' position because it found that service was proper on a domestic entity where, as here, the domestic entity was doing

## C.    CLSA Limited's Arguments to the Contrary Fail

The arguments that CLSA Limited raises in its Motion are meritless.  First, CLSA Limited claims that dismissal is warranted because "Plaintiffs must serve the operative complaint for service to be effective."  Motion at 1.  However, as noted above, "dismissal of a complaint is inappropriate when there exists a reasonable prospect that service may yet be obtained."  *Umbenhauer*, 969 F.2d at 30.  To the extent that the Court believes it necessary, CLSA Limited can receive service of all versions of the complaints filed in the proceeding.  "Technical defects do not justify dismissal unless a party is able to demonstrate actual prejudice."  *Foote*, 2019 WL 266294, at *3.  CLSA Limited has demonstrated no prejudice.

Second, CLSA Limited submits the Declaration of Cheuk Fan Marco Chung in support of its Motion ("Chung Declaration").  Although the Chung Declaration purports to set forth the ownership interests of the various corporate entities, it misses the point.  The issue is not whether CLSA Limited owns CLSA Americas, (although that fact may provide some information useful for the analysis).  The more

---

business in the forum that would otherwise have been done by the foreign entity.  *Id*. at 514.  The same is true of *Indagro, S.A. v. Nilva*, No. 07-CV-03742 SDW MCA, 2014 WL 1515587 (D.N.J. Apr. 17, 2014), which held that "[t]he rules of service are to be liberally construed where, as here, defendant has sufficient notice of the complaint."  *Id*. at *6. Additionally, CLSA Limited misreads *Gapanovich v. Komori Corp.*, 255 N.J. Super. 607 (App. Div. 1992).  Contrary to CLSA Limited's suggestion, the court in *Komori* did not suggest that service on a subsidiary is not effective.  Indeed, *Dewey*, among other cases, holds otherwise.  *Dewey*, 558 F. Supp. 2d at 513.

pertinent and dispositive question, however, is whether CLSA Americas acts as an agent of CLSA Limited ***through its domestic conduct*** such that service can be effectuated upon CLSA Americas to reasonably give notice to CLSA Limited. "Consistent therewith, the Supreme Court has described due process as requiring that the defendant's conduct and connection with the forum State [be] such that [it] should reasonably anticipate being haled into court there." *Allen Organ Co. v. Kawai Musical Instruments Mfg. Co.*, 593 F. Supp. 107, 112 (E.D. Pa. 1984) (citing *World-Wide Volkswagen Corporation v. Woodson,* 444 U.S. 286, 297 (1980)).

Once again, "a corporation which conducts its business activities in a certain District and profits from those activities conducted therein should not be immune from the jurisdiction of that District's courts of law solely on the basis of the formal design which the corporation has structured for its organization." *Evans*, 44 F.R.D. at 592. Here, service was proper because it was reasonably calculated to give actual notice to CLSA Limited of the proceedings against it. *See AIG Managed Mkt. Neutral Fund v. Askin Cap. Mgmt., L.P.*, 197 F.R.D. 104, 111 (S.D.N.Y. 2000) ("The fact that DLJ had actual notice that an action was filed against it militates against a finding of prejudice since the core function of service is to supply notice in a manner and at a time that afford the defendant a fair opportunity to answer the complaint and present defenses and objections."). Indeed, CLSA Limited's Motion itself evidences this fact.

13

Third, CLSA Limited suggests that the only proper way Plaintiffs could have effected service was through the Hague Convention.  Motion at 9-11.  However, as demonstrated above, the Hague Convention was not implicated because service was properly effected domestically.  "If alternative means to effectuate service exist, strict compliance with the service requirements under the Hague Convention is not always mandatory."  *In re TK Holdings*, No. AP 20-51004-BLS, 2021 WL 3796878, at *2 (D. Del. Aug. 26, 2021); *see also Brown v. China Integrated Energy Inc.,* 285 F.R.D. 560, 563 (C.D.Cal.2012) (finding that alternative service on a foreign defendant, effectuated in the United States, was not in violation of the Hague Convention).  Indeed, "the Hague Convention does not apply because Plaintiff's proposed method of service does not require the transmittal of documents abroad." *Bravetti v. Liu*, No. 3:12-CV-7492-MAS-TJB, 2013 WL 6501740, at *3 (D.N.J. Dec. 11, 2013).  "Thus, if domestic service on a foreign corporation were effected properly, the Hague Convention would not require additional, international service." *Affinity Labs of Texas, LLC v. Nissan N. Am. Inc.*, No. WA:13-CV-369, 2014 WL 11342502, at *2 (W.D. Tex. July 2, 2014).[5]

---

[5]    Defendants' cases do not hold otherwise.  In *Gutierrez v. Medtronic plc*, No. CV225573SDWMAH, 2023 WL 376014 (D.N.J. Jan. 5, 2023), *report and recommendation adopted,* No. 22-5573 (SDW)(MAH), 2023 WL 375729 (D.N.J. Jan. 24, 2023), there was no showing, as made here, regarding the contacts made with the forum by the entity.  The same is true for *Turick by Turick v. Yamaha Motor Corp., USA*, 121 F.R.D. 32 (S.D.N.Y. 1988), *Signs by Tomorrow-USA, Inc. v. G.W. Engel Co.*, No. CIV. 05-4353 RBK, 2006 WL 2224416 (D.N.J. Aug. 1, 2006), *West*

Finally, without asserting that the service that Plaintiffs effected on CLSA Americas was untimely, CLSA Limited suggests that Plaintiffs delayed service. Motion at 9-13.  CLSA Limited, however, fails to appreciate the unique procedural nature of securities class actions.  Courts have recognized that because of the nature of securities class actions – including a lengthy lead-plaintiff process where "no one party knows that it will have eventual responsibility for the class action until after certain procedural deadlines" – delays involving service are often inherent in the nature of securities class action litigation.  *In re Comverse Tech., Inc. Sec. Litig.*, 543 F. Supp. 2d 134, 147 (E.D.N.Y. 2008).  Additionally, "[t]he decision to litigate the propriety of past service or seek a different and less costly method of new service, rather than proceed with the costly and time-consuming process of serving the Defendants under the Hague Service Convention, does not signify a lack of due diligence." *In re Fairfield Sentry Ltd.*, No. 10-13164 (SMB), 2020 WL 7345988, at *15 (Bankr. S.D.N.Y. Dec. 14, 2020), *aff'd sub nom. Fairfield Sentry Ltd. (In Liquidation) by & through Krys v. Citibank, N.A. London*, No. 19-CV-3911 (VSB),

---

*v. Am. Honda Motor Co.*, No. CIV.A. 08-0700 (NLH), 2008 WL 4104683 (D.N.J. Aug. 28, 2008), and *Broschart v. Husqvarna AB*, No. CV2018795MASLHG, 2021 WL 3269664 (D.N.J. July 30, 2021).  Moreover, *RCC Ventures, LLC v. Brandtone Holdings Ltd.*, 322 F.R.D. 442 (S.D.N.Y. 2017) is distinguishable because it discusses a phrase – "as the court orders" – from a subsection that is inapplicable here. Additionally, the courts in *Gutierrez* and *Ingris v. Drexler*, No. CIV.A. 14-2404 ES, 2014 WL 7271905 (D.N.J. Dec. 17, 2014) based their holdings upon defendants' invocation of Rule 12(b)(2) – which, as noted above, CLSA Limited has waived.

2022 WL 4391023 (S.D.N.Y. Sept. 22, 2022), and *aff'd sub nom. Fairfield Sentry Ltd. (In Liquidation) by & through Krys v. Citibank, N.A. London*, No. 19-CV-3911 (VSB), 2022 WL 4391023 (S.D.N.Y. Sept. 22, 2022).[6]

"Nor have the Defendants identified any prejudice they have suffered as a result of the passage of time." *Fairfield*, 2020 WL 7345988, at *15. Although CLSA Limited makes a conclusory assertion regarding "substantial prejudice" (Motion at 13), it articulates no specific facts to support this claim – nor could it. Because of the stay of discovery imposed by the Private Securities Litigation Reform Act of 1995, no formal discovery has occurred, and this case is still at the pleading stage. Thus, CLSA Limited has failed to demonstrate prejudice and its arguments fail.[7]

---

[6] CLSA Limited attempts to fault Plaintiffs for not attempting to serve the Second Amended Complaint ("SAC") on February 2, 2023, when it served the original complaint and the FAC. Motion at 6. However, the SAC was filed one day earlier and the process for service with the prior complaints had already begun.

[7] CLSA Limited's cases are distinguishable. In *Dartell v. Tibet Pharms., Inc.*, No. CV 14-3620, 2017 WL 1206003 (D.N.J. Mar. 31, 2017), the court found that prejudice existed because "[f]act discovery closed approximately a month" after service, summary judgment motions had been filed, and settlements had been reached regarding certain defendants. *Id*. at *3. Procedurally, this case is vastly different because it is at the pleading stage and formal discovery has not commenced. Similarly, neither *Garlanger v. Verbeke*, 223 F. Supp. 2d 596 (D.N.J. 2002) nor *Coulter v. U.S. Dep't of Homeland Sec.*, No. CIV.A.07-4894JAG, 2009 WL 3068395 (D.N.J. Sept. 23, 2009) are securities class actions in which lengthy lead-plaintiff processes occur where "no one party knows that it will have eventual responsibility for the class action until after certain procedural deadlines." *Comverse*, 543 F. Supp. 2d at 147.

**IV.   ALTERNATIVELY, IF THE COURT WERE TO DETERMINE THAT SERVICE WAS INEFFECTIVE (AND IT WAS NOT), THE COURT SHOULD PERMIT PLAINTIFFS TO EFFECT SERVICE**

For the reasons demonstrated above, Plaintiffs have effected proper service upon CLSA Limited.  If, however, the Court were to determine that service was ineffective, the Third Circuit dictates that the Court should permit Plaintiffs to effect proper service.  As the Third Circuit has declared, "dismissal of a complaint is inappropriate when there exists a reasonable prospect that service may yet be obtained." *Umbenhauer*, 969 F.2d at 30.  "In such instances, the district court should, at most, quash service, leaving the plaintiffs free to effect proper service." *Id*.  In fact, it would constitute "an abuse of discretion" for a court to fail to permit a plaintiff from effecting proper service under such circumstances.  *Id*. at 32; *see also Pell v. Azar Nut Co.*, 711 F.2d 949, 950 n.2 (10th Cir. 1983) ("when a court finds that service is insufficient but curable, it generally should quash the service and give the plaintiff an opportunity to re-serve the defendant"); *Manning v. Hudson Cty.*, No. 17-3450, 2018 WL 3601228, at *2 (D.N.J. July 27, 2018) (declining to dismiss the complaint for failure to effectuate proper service and providing plaintiff with additional time to properly serve defendant); *Bright v. Tyson*, No. 15-8038, 2016 WL 3219876, at *3 (D.N.J. June 6, 2016) (same).

## V.    CONCLUSION

For the foregoing reasons, the Court should deny CLSA Limited's Motion.

DATED: May 3, 2023                          Respectfully submitted,

**CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO, P.C.**

By:    _/s/ James E. Cecchi_
James E. Cecchi
Lindsey H. Taylor
Donald A. Ecklund
5 Becker Farm Road
Roseland, New Jersey 07068
Telephone: (973) 994 -1700

*Liaison Counsel for Plaintiffs and the Class*

**GLANCY PRONGAY & MURRAY LLP**
Robert V. Prongay
Ex Kano S. Sams II
Charles H. Linehan
Pavithra Rajesh
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150

*Counsel for Plaintiffs and the Class*

**LAW OFFICES OF HOWARD G. SMITH**
Howard G. Smith
3070 Bristol Pike, Suite 112
Bensalem, PA 19020
Telephone: (215) 638-4847
Facsimile: (215) 638-4867

*Additional Counsel*

18

## PROOF OF SERVICE

I hereby certify that on this 3rd day of May 2023, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

*s/ James E. Cecchi*

James E. Cecchi