## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

CRAIG J. HOLLAND, Individually and On     :
Behalf of All Others Similarly Situated,     :

    :

        Plaintiffs,     :

v.     :     21-cv-948 (MCA) (MAH)

    :

9F INC., LEI SUN, YANJUN LIN, YIFAN     :     **ECF Case**
REN, CHANGXING XIAO, FLYNN XUXIAN   :     **Electronically Filed**
HUANG, IVAN XU, JUNSHENG ZHANG,     :
WING HON CHEUNG, FANGXIONG GONG,   :     **ORAL ARGUMENT**
DAVID CUI, LEI LIU, SIU FUNG MING,     :     **REQUESTED**
CREDIT SUISSE SECURITIES (USA) LLC,     :
HAITONG INTERNATIONAL SECURITIES     :
COMPANY LIMITED, CLSA LIMITED,     :
CHINA INVESTMENT SECURITIES     :
INTERNATIONAL BROKERAGE LIMITED,   :
9F PRIMASIA SECURITIES LIMITED, and     :
COGENCY GLOBAL INC.,     :

    :

        Defendants.     :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## REPLY MEMORANDUM OF LAW IN FURTHER
## SUPPORT OF DEFENDANTS' JOINT MOTION TO DISMISS
## THE SECOND AMENDED CLASS ACTION COMPLAINT

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................. ii

PRELIMINARY STATEMENT ...........................................................................1

ARGUMENT........................................................................................................2

I.   PLAINTIFFS AGAIN FAIL TO PLEAD A MISREPRESENTATION........2

    A.   Plaintiffs Cannot Replead Around 9F's Specific Disclosure of the Facts and Risks that Were Supposedly Omitted ..................................3

    B.   The SAC Still Contains Only Conclusory Allegations of an Illegal Scheme Designed to Evade the 2019 Notice ......................................7

    C.   Plaintiffs' Alleged Scheme Would Not Be Actionable......................10

II.  PLAINTIFFS AGAIN FAIL TO PLEAD SCIENTER...............................11

III. PLAINTIFFS AGAIN FAIL TO PLEAD LOSS CAUSATION .................13

IV.  PLAINTIFFS AGAIN FAIL TO ALLEGE THAT THE UNDERWRITER DEFENDANTS WERE NEGLIGENT .........................14

CONCLUSION ........................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*In re 9F Inc. Securities Litigation*,
   No. 654654/2020, 2023 WL 2371874 (N.Y. Sup. Ct. Mar. 6, 2023) .............4

*Aldridge v. A.T. Cross Corp.*,
   284 F.3d 72 (1st Cir. 2002) ........................................................................11

*Bauer v. Prudential Financial, Inc.*,
   Nos. 09-1120 (JLL), 09-1771 (JLL), 2010 WL 2710443 (D.N.J. June
   29, 2010)....................................................................................................3, 4

*Caiafa v. Sea Containers Ltd.*,
   331 F. App'x 14 (2d Cir. 2009)...................................................................15

*In re Campbell Soup Co. Securities Litigation*,
   No. 18-14385 (NLH/JS), 2020 WL 7022655 (D.N.J. Nov. 30, 2020) .....6, 14

*In re Ferrellgas Partners, L.P. Securities Litigation*,
   764 F. App'x 127 (2d Cir. 2019)...................................................................4

*Frank v. Dana Corp.*,
   646 F.3d 954 (6th Cir. 2011).......................................................................12

*Freudenberg v. E*Trade Financial Corp.*,
   712 F. Supp. 2d 171 (S.D.N.Y. 2010) ..........................................................5

*Galati v. Commerce Bancorp, Inc.*,
   220 F. App'x 97 (3d Cir. 2007).....................................................................6

*Gamm v. Sanderson Farms, Inc.*,
   944 F.3d 455 (2d Cir. 2019)...................................................................10, 11

*In re Hertz Global Holdings, Inc. Securities Litigation*,
   No. 13-7050, 2017 WL 1536223 (D.N.J. Apr. 27, 2017), *aff'd*, 905
   F.3d 106 (3d Cir. 2018)................................................................................6

ii

*Institutional Investors Group v. Avaya, Inc.*,
    564 F.3d 242 (3d Cir. 2009) ...........................................................................9

*In re Intelligroup Securities Litigation*,
    527 F. Supp. 2d 262 (D.N.J. 2007) ......................................................... 12, 14

*In re LexinFintech Holdings Ltd. Securities Litigation*,
    No. 3:20-cv-1562-SI, 2021 WL 5530949 (D. Or. Nov. 24, 2021) .................9

*Miao v. Fanhua, Inc.*,
    442 F. Supp. 3d 774 (S.D.N.Y. 2020) ..........................................................8

*National Junior Baseball League v. Pharmanet Development Group Inc.*,
    720 F. Supp. 2d 517 (D.N.J. 2010) .............................................................12

*Odeh v. Immunomedics, Inc.*,
    No. 18-17645, 2020 WL 4381924 (D.N.J. July 31, 2020) .......................5, 13

*Public Employees Retirement System of Mississippi, Puerto Rico Teachers
    Retirement System v. Amedisys, Inc.*,
    769 F.3d 313 (5th Cir. 2014) .......................................................................14

*Roofer's Pension Fund v. Papa*,
    No. 16-2805, 2018 WL 3601229 (D.N.J. July 27, 2018) .........................7, 13

*In re Suprema Specialties, Inc. Securities Litigation*,
    438 F.3d 256 (3d Cir. 2006) ..........................................................................3

## PRELIMINARY STATEMENT

The Opposition confirms what was evident on the face of the SAC: Plaintiffs failed to meaningfully grapple with the Court's prior rejection of their claims.[1] Strikingly absent from both the Opposition and the SAC is anything *new*. Plaintiffs all but ignore the Opening Brief—and this Court's prior holding—and fail to allege a single new non-conclusory fact to support their claim of a so-called "illegal and secret" arrangement between 9F and PICC. The Court repeatedly stressed that Plaintiffs needed to plead the who, what, where, when and why of the alleged scheme and provide a factual basis for such allegations. Instead, the SAC continues to rely on the same inadequate sources as the FAC, and the Opposition does not even attempt to rebut their facial inadequacy. The Opposition also fails to grapple with the Company's extensive disclosures, as this Court recognized, including that "PICC was responsible for collecting all loan facilitation fees from borrowers and remitting 9F's portion." (Ex. A at 13:13-14:2.[2]) Nothing in the SAC can change the fact that 9F disclosed the very information that was allegedly concealed, which precludes Plaintiffs' claims even under Rule 8's more lenient pleading standard.

---

[1] "Opposition" or "Opp." refers to Plaintiffs' Opposition to Defendants' Joint Motion to Dismiss, ECF No. 51. Capitalized terms not defined herein have the meanings ascribed to them in the Memorandum of law in Support of Defendants' Joint Motion to Dismiss, ECF No. 51-1 ("Opening Brief" or "Br.").

[2] Exhibits cited herein are attached to the Certification of Scott D. Musoff, dated April 3, 2023, ECF No. 51-2.

The Opposition similarly fails to counter that the SAC regurgitates the same insufficiently pled scienter allegations from the FAC.  Plaintiffs still assert only "general allegations" that the Individual Defendants "were sort of involved, they had knowledge of this scheme, . . . they had stock, they were well compensated, they resigned, and that they didn't follow GAAP."  (Ex. A at 18:25-19:10.)  The Court correctly held such allegations are insufficient to raise the requisite strong inference of scienter.  The SAC adds no new factual allegations to warrant a different outcome.

Finally, the Opposition has no answer to Defendants' arguments (and the Court's observations) about the standing and causation issues here; nor can Plaintiffs point to any factual allegations of any wrongdoing by the Underwriter Defendants. Having tried and failed repeatedly to state a claim, this action should be dismissed in its entirety with prejudice.

## ARGUMENT

## I. PLAINTIFFS AGAIN FAIL TO PLEAD A MISREPRESENTATION

Because Plaintiffs provide nothing more than conclusory allegations of a purported "scheme," Plaintiffs' claims fail even under Rule 8.  Indeed, as Plaintiffs' cases confirm, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[;] [t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do

not suffice." *Bauer v. Prudential Fin., Inc.*, Nos. 09-1120 (JLL), 09-1771 (JLL), 2010 WL 2710443, at *5 (D.N.J. June 29, 2010).[3]

> **A.   Plaintiffs Cannot Replead Around 9F's Specific Disclosure of the Facts and Risks that Were Supposedly Omitted**

> **1.   The Offering Documents Disclosed the Relevant Information and Risks Regarding PICC**

The Opposition fails to salvage any of the SAC's theories—that 9F (1) misled investors about how it changed its business in response to Chinese regulatory developments; (2) concealed the risks of its partnership with PICC; and (3) facilitated loans with total borrowing costs exceeding the 36% limit. Plaintiffs assert that "the Registration Statement did not mention that 9F charged loan facilitation service fees from PICC." (Opp. at 18.) But that is false, as the Court already recognized. (Ex. A at 13:23-14:2 (holding that Defendants in fact disclosed, among other things, that 9F was "taking this fee, and they disclosed that they were in a lawsuit with PICC, and they disclosed that PICC was responsible for collecting all loan facilitation fees from borrowers and remitting 9F's portion").) For example, the Offering Documents disclosed that 9F "stopped charging service fees from

---

[3]   The Opposition ignores Defendants' critical distinction of *In re Suprema Specialties, Inc. Securities Litigation*, 438 F.3d 256 (3d Cir. 2006). Unlike *Suprema*, Plaintiffs here do not claim that Defendants negligently failed to uncover fraud, but that they actively engaged in a secret and illegal scheme to circumvent Chinese regulations—classic accusations of fraud. (*See* Br. at 22 n.7.)

borrowers since April 2019," and instead "charge[s] service fees from financial institutional partners," such as PICC. (Ex. B at 35.) The Opposition offers no reason why these disclosures supposedly did not warn investors that PICC remitted service fees to 9F. (*See* Opp. at 19 & n.6.) Plaintiffs' contention that 9F's warnings that PICC may withhold the fees owed to 9F were insufficient because the risk "ha[d] already come to fruition" fails. (Opp. at 20.) Unlike the cases Plaintiffs cite, PICC did not stop paying service fees to 9F until *three months after* the August 2019 IPO.

Moreover, the Opposition cannot point to any allegations (because there are none) showing that Defendants knew or expected at the time of the IPO that PICC would challenge the Cooperation Agreement months later. The SAC therefore "suffers from a fatal defect: it assumes without sufficient supporting allegations that Defendants knew or should have known that a contractual counterparty would ultimately default on payments owed." *In re Ferrellgas Partners, L.P. Sec. Litig.*, 764 F. App'x 127, 128 (2d Cir. 2019); *see also Bauer*, 2010 WL 2710443, at *10 (dismissing under Rule 8 where "Plaintiff has not alleged facts to support a claim that . . . as of the date of the Offering, Prudential knew that losses related to the Joint Venture Litigations were probable"). The related state court action here was dismissed for the same reason (under notice pleading standards). *In re 9F Inc. Sec. Litig.*, No. 654654/2020, 2023 WL 2371874, at *1 (N.Y. Sup. Ct. Mar. 6, 2023) ("[P]laintiffs do not allege any contemporaneous facts (*e.g.*, PICC did not make a

4

payment) in August 2019 at the time of the offering, that would suggest that PICC was not going to make the payments that it was obligated to make.").[4]

Plaintiffs also claim that the risk disclosures "were overshadowed by Defendants' representations that the Company did not have an outstanding loan balance with an APR higher than 36%." (Opp. at 26 n.10.)  Again, Plaintiffs ignore 9F's extensive disclosures that both detailed its method for calculating fees pursuant to these regulations and warned that there is no "official method for calculating annual interest and fees rates." (Br. at 17; Ex. B at 33.)  Moreover, Plaintiffs do not claim that the risk that regulators would find 9F in violation of the 36% cap ever materialized.[5]  (Br. at 18.)

---

[4]   Plaintiffs try to distinguish the state court's dismissal because, unlike here, that action did not allege any accounting violations (Opp. at 29 n.11), but that has nothing to do with both actions' failure to allege that the PICC dispute existed as of the IPO.  Plaintiffs' citation to *Odeh v. Immunomedics, Inc.*, No. 18-17645, 2020 WL 4381924 (D.N.J. July 31, 2020) (Opp. at 20) only highlights the type of contemporaneous allegations missing here.  There, defendant represented that its drug's "FDA review would be 'very much sort of a check-the-box exercise,'" *id.* at *6, when in fact, defendants "were aware of [a] Data Integrity Breach" *at the time those statements were made* that "could seriously jeopardize [the drug's] FDA approval." *Id.*

[5]   Unlike in *Freudenberg v. E\*Trade Financial Corp.*, 712 F. Supp. 2d 171 (S.D.N.Y. 2010) (Opp. at 26 n.10), "where loans were internally known to be of poor quality, inadequately reviewed, improperly described and highly risky at the time they were purchased," *id.* at 191, here there is no allegation that anyone at 9F believed the Company was doing anything illegal or violating any regulations.

5

### 2.    No Additional Disclosure Was Required

The Opposition similarly fails to establish that any additional disclosure was required under GAAP or Items 105 and 303 of Regulation S-K.  (*See* SAC ¶¶ 111, 116.)  As to GAAP, the Opposition does not dispute that 9F's reported financial results were accurate.  (Opp. at 28.)  *See Galati v. Com. Bancorp, Inc.*, 220 F. App'x 97, 102 (3d Cir. 2007).  Plaintiffs offer no explanation for how this accurate financial data could be misleading, including as they relate to the Company's dealings with PICC.  (*See* Opp. at 28.)

The Opposition also argues that, "under GAAP, 9F should have separately disclosed in the Registration Statement revenue recognized from its lending contracts with its borrowers that 9F indirectly collected through PICC" and "should have separately disclosed the opening and closing balances of receivables from PICC."  (Opp. at 27.)  But the Registration Statement reported financial results only through the quarter ended March 31, 2019—*before* PICC began collecting services fees in April 2019.  Thus, there was nothing to "separately disclose" at that time.[6]

In any event, 9F's revenue recognition determinations are inherently subjective.  *See, e.g.*, *In re Hertz Glob. Holdings, Inc. Sec. Litig.*, No. 13-7050, 2017

---

[6]    Separately, the Opposition ignores Defendants' argument that Plaintiffs have not established PICC is a "customer" within the meaning of ASC 606 (Br. at 19), and thus concedes the point.  *See In re Campbell Soup Co. Sec. Litig.*, No. 18-14385 (NLH/JS), 2020 WL 7022655, at *5 n.2 (D.N.J. Nov. 30, 2020).

WL 1536223, at *11 (D.N.J. Apr. 27, 2017) (Arleo, J.), *aff'd*, 905 F.3d 106 (3d Cir. 2018).  Plaintiffs cite no authority to the contrary.  In fact, their own cited case from this Court confirms that Plaintiffs cannot allege an accounting violation without "identify[ing] any objective rules."  *Roofer's Pension Fund v. Papa*, No. 16-2805, 2018 WL 3601229, at *10 (D.N.J. July 27, 2018) (Arleo, J.).[7]

Plaintiffs' claims under Items 105 and 303 of SEC Regulation S-K fare no better.  (*See* Opp. at 29-30.)  9F disclosed PICC's risk of nonpayment, and Plaintiffs do not allege facts showing 9F had any reason to suspect (and warn of) anything more specific.  While the Opposition argues that "[e]ven a one-time regulatory event, if 'reasonably expect[ed]' to have a material impact on the company must be disclosed" (*id.* at 30), Plaintiffs do not allege *any* regulatory action against 9F.

**B.      The SAC Still Contains Only Conclusory Allegations of an Illegal Scheme Designed to Evade the 2019 Notice**

Seemingly recognizing these deficiencies, Plaintiffs zero in on their new claim: that 9F charged borrowers over 36% APR in violation of Circular 141.  (Opp. at 21-26.)  Plaintiffs assert that this "is the precise theory that the Court held could be actionable."  (Opp. at 22.)  The problem is that Plaintiffs fail to allege facts supporting this theory.  The Court repeatedly emphasized that one of its concerns

---

[7]   9F's determination of its contingent liabilities is similarly subjective, and Plaintiffs fail to allege any facts that would have justified—much less required—taking a contingent liability.

was Plaintiffs' failure to plead the percentage of the purported insurance premium that PICC "kicked back" to 9F.  According to this Court, the total fee charged to the borrower—the only new allegation in the SAC—was only "half of it" and "[t]he other half is, then [PICC] kicked it all back to 9F." (Ex. A at 18:1-5; *see also id.* at 9:11-15, 14:21-15:1.)  Indeed, the Court asked Plaintiffs "[w]hat evidence" they had "and why [] this was the scheme, that PICC was charging outrageous fees and they were kicking 95% of it back to 9F?"  (Ex. A at 14:23-15:1.)  But the SAC does not add a single non-conclusory fact addressing the Court's concerns about the alleged kick-back portion of the scheme.

In dismissing the FAC, the Court recognized that "most or all of the basis for this whole scheme is from third-party statements from different journal articles and web sites, but there's nothing here that I can see where any witness or other than generalized pleading [says] that this was an illegal scheme[.]"  (Ex. A at 7:16-20.) Nothing has changed on that score.  For their kick-back allegation, Plaintiffs continue to rely solely on a purported expert cited in *The China Securities Journal*. (Opp. at 16-18.)  But Plaintiffs fail to address the well-accepted proposition that "statements made by anonymous—and often vaguely described—interviewees, with whom plaintiff's counsel has not had contact, but whom counsel has learned about secondhand . . . . are insufficiently particular." *Miao v. Fanhua, Inc.*, 442 F. Supp. 3d 774, 797 (S.D.N.Y. 2020).  While courts do "rely upon the accounts of

8

anonymous sources in securities actions," it is not blind reliance.  (Opp. at 17 n.5.)

As Plaintiffs' cases make clear, courts "evaluat[e] the 'detail provided by the

confidential sources, the sources' basis of knowledge, the reliability of the sources,

the corroborative nature of [the allegations] . . . and similar indicia.'" *Institutional*

*Invs. Grp. v. Avaya, Inc.*, 564 F.3d 242, 263 (3d Cir. 2009).  Plaintiffs once again

fail to allege that the purported expert—or FE1 for that matter—were in a position

to know the relevant facts to be able to speak reliably about the purported scheme.

Because the SAC failed to remedy the deficiencies these sources posed in the FAC,

this Court should similarly "discount [these sources] steeply."  *Id.*

Similarly, the Opposition spends four pages regurgitating the anecdotal

complaints of the three alleged consumers (Opp. 23-26; SAC ¶¶ 65-71), but ignores

that such isolated allegations are insufficient to plead a company-wide illegal

scheme to overcharge borrowers.  (*See* Br. at 26.)  *See also In re LexinFintech*

*Holdings Ltd. Sec. Litig.*, No. 3:20-cv-1562-SI, 2021 WL 5530949, at *8 (D. Or.

Nov. 24, 2021).  Moreover, none of these allegations pertains to the amount PICC

purportedly kicked back to 9F.  (*See* Ex. A at 9:7-15,  14:21-15:1,  18:4-9.)

Regardless, even taking Plaintiffs' allegations at face value, they failed to establish

that 9F violated the 36% cap because Plaintiffs artificially inflated their APR

calculations by not using the full loan amounts.  (*See* Br. at 27-28.)  The Opposition

urges the Court to ignore this issue as a premature factual dispute, but Plaintiffs do

9

not actually dispute that their APR calculations are artificially inflated. (Opp. at 26 n.10.)

Plaintiffs' reference to a penalty notice issued to PICC (not 9F) adds nothing. (*See* Opp. at 19.) The notice did not accuse 9F and PICC of any kickback scheme or of violating the 36% APR cap under Circular 141. Rather, it allegedly faulted PICC for "fail[ing] to charge premiums according to the rates pre-approved by the Commission." (Opp. at 19.)

## C.    Plaintiffs' Alleged Scheme Would Not Be Actionable

Finally, even assuming *arguendo* that PICC "kicked back" a portion of its insurance premiums to 9F, Plaintiffs fail to allege facts showing that this was designed to be an end run around the 2019 Notice or was otherwise unlawful. (Br. at 28-29.) Contrary to Plaintiffs' suggestion that the Court "rejected" this argument (Opp. at 2, 26 & n.10), the Court *confirmed* that Plaintiffs must allege facts establishing that the arrangement with PICC "was really an end run around" the 2019 Notice. (Ex. A at 23:17-24:16.) They have not done so. The SAC does not allege that PICC ever even claimed that "9F used PICC as a conduit to circumvent regulatory bans on collecting fees from borrowers that exceeded 36%." (*See* SAC ¶ 108.) Plaintiffs' claims that the June 12, 2020 Form 6-K and Form NT 20-F were false or misleading for failing to disclose that 9F supposedly used PICC as a conduit to circumvent the 2019 Notice therefore also fail. (Opp. at 32-33.) *See Gamm v.*

10

*Sanderson Farms, Inc.*, 944 F.3d 455, 458 (2d Cir. 2019) ("[W]hen a complaint claims that statements were rendered false or misleading through the nondisclosure of illegal activity, the facts of those underlying illegal acts must also be pleaded with particularity.").

## II.    PLAINTIFFS AGAIN FAIL TO PLEAD SCIENTER

Although the Court "did not make a final ruling on scienter" in the FAC (Opp. at 35 n.13), the Court repeatedly expressed "concern" about the adequacy of Plaintiffs' scienter allegations and asked for "more pleading under scienter." (Ex. A at 5:2-3, 18:25-19:10.)  The Opposition does not dispute that the SAC contains no new scienter allegations.  (*See* Opp. at 33-39.)  As to motive, Plaintiffs regurgitate the same generic allegations that Defendants were "all motivated by their own and the Company's financial interests" (Opp. at 34), which are insufficient.  (Ex. A at 18:25-19:10; Br. at 32-33.)  The Opposition asserts that Defendants' "financial incentives to exaggerate earnings go far beyond the usual arrangements of compensation based on the company's earnings" (Opp. at 34), yet Plaintiffs do not even claim that 9F exaggerated earnings or allege any facts showing Defendants had any unusual incentives.[8]

---

[8]    Plaintiffs' cases are inapposite.  *See Aldridge v. A.T. Cross Corp.*, 284 F.3d 72, 83 (1st Cir. 2002) (holding compensation allegations "alone [are] not and cannot be enough to establish scienter," but the complaint alleged sufficient "particular

11

Plaintiffs' allegations of reckless or conscious misbehavior are equally deficient.  (Br. at 33-34.)  First, contrary to Plaintiffs' assertion, Defendants never "admitted" that 9F entered into an illegal arrangement with PICC (SAC ¶¶ 88, 184; Opp. at 35-36), and Plaintiffs do not identify any "report[] or statement[]" saying otherwise.  *See In re Intelligroup Sec. Litig.*, 527 F. Supp. 2d 262, 286 (D.N.J. 2007). Second, even crediting FE1's allegation that "neither 9F nor PICC informed *borrowers* that PICC collection loan facilitation service fees" (Opp. at 36), that provides no basis to infer that 9F intended to defraud *investors* by misrepresenting PICC's role—as Plaintiffs must establish to plead scienter.  Critically, neither FE1 nor any other alleged source "claims to have met, emailed with, spoken to, or otherwise heard or read anything by, [any] of the Individual Defendants" regarding PICC.  *Nat'l Junior Baseball League v. Pharmanet Dev. Grp. Inc.*, 720 F. Supp. 2d 517, 555 (D.N.J. 2010).  Third, Plaintiffs fail to allege any GAAP violation (*see supra* at 6-7), which would be insufficient to plead scienter in any event.  *Pharmanet Dev. Grp. Inc.*, 720 F. Supp. 2d at 557 ("[C]ourts have uniformly held that allegations of scienter based on GAAP violations do not create the requisite strong

---

financial incentives" including, among other things, that "[t]he exercise price of the individual defendants' stock options was lowered . . . just before the introduction of the new product line"); *Frank v. Dana Corp.*, 646 F.3d 954, 960-62 (6th Cir. 2011) (scienter pled where financial incentives included "millions in bonuses" tied to company performance).

12

inference of scienter unless plaintiffs' complaint alleges 'more.'"). (*See also* Ex. A at 19:6-10.) Fourth, the resignations of certain Individual Defendants provide no support for inferring scienter because they occurred months before the PICC dispute was disclosed and Plaintiffs allege no facts indicating the resignations had anything to do with PICC.[9] (Opp. at 38.) Lastly, the core operations doctrine adds nothing where, as here, Plaintiffs have not pointed to any specific information related to the alleged fraud that was conveyed to Defendants. (*See* Opp. 38-39.) *See also Odeh*, 2020 WL 4381924, at *8. In short, considering the SAC holistically, Plaintiffs' theory of fraud "does not make sense on the facts alleged, let alone present a cogent or compelling" inference of scienter. (Br. at 34.)

## III.    PLAINTIFFS AGAIN FAIL TO PLEAD LOSS CAUSATION

Plaintiffs cannot dispute that there was no decline in 9F's ADS price the first *two* times that the PICC dispute was disclosed. While the Opposition argues that the *third* disclosure about the PICC dispute (on June 17, 2020) revealed "new" information—namely, that 9F stopped using PICC to insure new loans in November 2019 and suspended its cooperation with PICC entirely in December 2019 (Opp. at 39-40 n.14)—these post-IPO developments do not contradict anything in the

---

[9]    By contrast, the resignations in *Roofer's Pension Fund* occurred on the same day that the company announced it was investigating its revenue recognition practices and would sell for substantially less than it had been valued, which supported an inference that they were related. 2018 WL 3601229 at *20.

13

Offering Documents.  Similarly, Plaintiffs allege no facts indicating that the June 22, 2020 announcement that 9F's Chief Risk Officer was shifting to another role (which Plaintiffs continue to mischaracterize as a "removal") had anything to do with the PICC dispute, let alone corrected any prior misrepresentation or omission by 9F. (Opp. 39 n.14; Ex I at 2.)  *See Intelligroup*, 527 F. Supp. 2d at 328 (no loss causation given plaintiffs' "failure to allege an actual link" between the alleged corrective disclosures and misstatement).[10]

## IV.    PLAINTIFFS AGAIN FAIL TO ALLEGE THAT THE UNDERWRITER DEFENDANTS WERE NEGLIGENT

Finally, the Opposition completely ignores the Opening Brief's arguments concerning the deficiency of the SAC's Underwriter allegations.  (SAC ¶¶ 46, 118, 134-35.)  Any response to these arguments has therefore been waived.  *See Campbell Soup Co.*, 2020 WL 7022655, at *5 n.2.  In any event, the SAC's general statements simply mirror the same insufficient and conclusory allegations Plaintiffs raised in the FAC.  (Br. at 39-40.)  Because Plaintiffs cannot allege facts showing that the

---

[10]  Plaintiffs' cited case is not to the contrary and in fact confirms that "the announcement of the resignations . . . [does] not in and of itself constitute a corrective disclosure."  *Pub. Emp's Ret. Sys. of Miss., Puerto Rico Teachers Ret. Sys. v. Amedisys, Inc.*, 769 F.3d 313, 322 (5th Cir. 2014).  Moreover, in *Amedisys*, the executives fully resigned from the company, whereas here the prior CRO continued working at 9F in other roles.  (*See* Ex. I at 2.)

Underwriter Defendants were negligent in failing to uncover the alleged misstatements, the claims against them should be dismissed.[11]

## CONCLUSION

As demonstrated above, and in light of Plaintiffs' multiple opportunities to state a claim, the SAC should be dismissed in its entirety with prejudice.

Dated: May 17, 2023
New York, New York

Respectfully submitted,

SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP

/s/ Scott D. Musoff
Scott D. Musoff
(scott.musoff@skadden.com)
Robert A. Fumerton (*pro hac vice*)
(robert.fumerton@skadden.com)
Michael C. Griffin (*pro hac vice*)
(michael.griffin@skadden.com)
One Manhattan West
New York, NY 10001
Telephone: (212) 735-3000
Facsimile: (212) 735-2000

*Attorneys for Defendants 9F Inc.,*
*9F Primasia Securities Limited, Flynn*
*Xuxian Huang and Cogency Global Inc.*

---

[11] Plaintiffs' suggestion that standing is a factual question to be resolved through discovery (Opp. at 40 n.15) also fails because, unlike in *Suprema*, where "it [was] impossible for plaintiffs to know whether their shares were newly issued or were purchased in the secondary market" prior to discovery, 438 F.3d at 274 n.7, here, Plaintiffs' own certifications (ECF Nos. 9-2 at 8, 44-1 at 1), "confirm[] that they acquired the securities in a secondary market." *Caiafa v. Sea Containers Ltd.*, 331 F. App'x 14, 16 (2d Cir. 2009).

DUGHI, HEWIT & DOMALEWSKI, P.C.

/s/ Craig A. Domalewski
Craig A. Domalewski
Scott A. Hall
340 North Avenue
Cranford, New Jersey 07016
Telephone: 908-272-0200

CAHILL GORDON & REINDEL LLP

/s/ David G. Januszewski
David G. Januszewski (*pro hac vice*)
Sheila C. Ramesh (*pro hac vice*)
32 Old Slip
New York, NY 10005
Telephone: 212-701-3000
212/269-5420 (fax)

*Attorneys for Defendant Credit Suisse Securities (USA) LLC*

## CERTIFICATION OF SERVICE

I hereby certify that a copy of the foregoing was filed electronically with the United States District Court for the District of New Jersey through the Court's ECF System on this date.  The Notice of Electronic Filing constitutes service on all parties under Rule 14(b)(1) of this Court's ECF Policies and Procedures listed in Local Civil Rule 5.2.

Dated: May 17, 2023

/s/ Scott D. Musoff
Scott D. Musoff
