**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| CRAIG J. HOLLAND, Individually and on behalf of all others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>9F INC., et al.,<br><br>*Defendants*. | No. 21-cv-00948 (MEF)(MAH)<br><br>**OPINION and ORDER** |

\* \* \*

For the purposes of this brief Opinion and Order, the Court largely assumes familiarity with the facts and procedural history of this case.

\* \* \*

The Plaintiffs[1] sued on behalf of a putative class of investors. See Revised Second Amended Complaint ("Complaint") ¶ 1. They were allegedly misled when they bought shares of a certain company --- in violation, among other things, of the Securities Act of 1933 ("the '33 Act"). See id.

---

[1] John Wait and Delanta Harrison. Wait is the lead Plaintiff. Harrison is a named Plaintiff. Earlier in the litigation, Wait was appointed lead Plaintiff, and the motion to appoint Craig Holland was denied. See Docket Entry 19. No party has sought to alter the caption to reflect this.

The Defendants[2] moved to dismiss.  See Joint Motion to Dismiss Revised Second Amended Complaint ("Joint Motion to Dismiss") at 3.

At oral argument on the motion, the Court directed the parties to further address certain issues.  See Order (May 21, 2024); Transcript (May 21, 2024) at 53:7-13.

The briefing was filed, and the Defendants' motion to dismiss is now fully submitted and before the Court.

As to the Plaintiffs' claim under Section 11 of the '33 Act, the motion is granted.

\*   \*   \*

Start off with some background.

\*   \*   \*

Securities are typically brought to market through an initial public offering ("IPO").  An IPO is the process by which a private company agrees to sell all or part of itself to the public.  See Thomas Lee Hazen, 1 Law Sec. Reg. § 3:1 (2024); Harold S. Bloomenthal & Samuel Wolff, 3B Sec. & Fed. Corp. Law § 8.1 (2d ed. 2024).

Among other things, companies pushing through the IPO process must usually (but not always) file a "registration statement." See 15 U.S.C. §§ 77b(a)(8), 77e, 77f; see also id. § 77d.  A registration statement must include, among other things, information as to the company and the nature of the security. See id. § 77g; see also id. § 77aa (Schedule A).

After the private company has gone public, the public gets a chance to step in --- to buy and sell company stock on the open market.  See Thomas Lee Hazen, 4 Law Sec. Reg. § 14:3-4 (2024); Harold S. Bloomenthal & Samuel Wolff, 3B Sec. & Fed. Corp. Law §§ 1:139, 8:4-5 (2d ed. 2024).

\*   \*   \*

---

[2] The Defendants are 9F Inc., the company whose shares the Plaintiffs allegedly bought, see Complaint ¶¶ 1, 19-21, plus a set of related companies, certain underwriters, and various individuals, see id. ¶¶ 22-43.

To regulate all of this, there are a number of laws in play. Zero in here on two.

The first is the '33 Act.

It "focus[es] primarily on the regulation of new offerings." Slack Techs., LLC v. Pirani, 598 U.S. 759, 762 (2023) (cleaned up); see also Gustafson v. Alloyd Co., 513 U.S. 561, 571 (1995); United States v. Naftalin, 441 U.S. 768, 777-78 (1979); Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 752 (1975).

Section 11 is one of the parts of the '33 Act that is at issue in this case. It allows certain investors to sue if they have been misled by the registration statement. See 15 U.S.C. § 77k(a).

The second relevant law here is the Securities Exchange Act of 1934 ("the '34 Act").

Section 10b of the '34 Act (through SEC Rule 10b-5) allows investors to sue if they have been misled. See id. § 78j(b); 17 C.F.R. § 240.10b-5. And it applies across the board --- to new offerings covered by the '33 Act, see Herman & MacLean v. Huddleston, 459 U.S. 375, 383 (1983), and also throughout the life of a security, as it is bought and sold on a secondary market. See In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1417 (3d Cir. 1997); see also Herman & MacLean, 459 U.S. at 382 ("[A] Section 10(b) action can be brought by a purchaser or seller of 'any security' against 'any person'[.]"); Gustafson, 513 U.S. at 592 (Thomas, J., dissenting).[3]

For stock buyers, lawsuits are harder to make work under Section 10b of the '34 Act than under Section 11 of the '33 Act.

The reason: Section 10b plaintiffs must plead and ultimately prove scienter --- the "intent to deceive, manipulate, or defraud." Ernst & Ernst v. Hochfelder, 425 U.S. 185, 193 n.12 (1976); see Matrixx Initiatives, Inc. v. Siracusano, 563 U.S. 27, 48 (2011); Herman & MacLean, 459 U.S. at 382; In re Hertz Glob. Holdings, Inc., 905 F.3d 106, 114 (3d Cir. 2018); see also

---

[3] "Primary market" generally refers to the market for newly-issued securities being sold to investors for the first time. "Secondary market" generally refers to the buying and selling of already-existing stock --- typically through a stock exchange. See Thomas Lee Hazen, 1 Law Sec. Reg. § 1:9 n.5 (2024).

15 U.S.C. § 78j (prohibiting the "use . . . [of] any manipulative or deceptive device[s]").

But Section 11 plaintiffs do not need to establish scienter. See Slack, 598 U.S. at 762; Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund, 575 U.S. 175, 179 (2015); Herman & MacLean, 459 U.S. at 382; see also 15 U.S.C. § 77k(a).

This can be a major difference.

A company, though acting without scienter, might badly misstate a core aspect of its financial prospects.  Such a scienter-free misstatement might be actionable if it is made in the registration statement and covered by Section 11 of the '33 Act. But the same misstatement would not be actionable if it is not in the registration statement, and is covered only by Section 10b of the '34 Act --- if the misstatement is in a post-IPO investor call, for example, or in a legally-required post-IPO disclosure.

In short: the bar is lower for lawsuits under Section 11 of the '33 Act than under Section 10b of the '34 Act.

This makes it especially important as a practical matter to know when Section 11 applies and when it does not.  Take that up just below.

\*   \*   \*

In 1991, the Third Circuit held that Section 12 of the '33 Act applies all-but exclusively to initial offerings of a security, not as to secondary market buying-and-selling of it.  See Ballay v. Legg Mason Wood Walker, Inc., 925 F.2d 682, 689-91 (3d Cir. 1991); accord, e.g., Gustafson, 513 U.S. at 577-78.

And the Third Circuit's approach in Ballay seemed to imply the possibility that Section 11 might also apply only as to shares sold in an initial offering.  See Ballay, 925 F.2d at 690-92 (arguably making this suggestion).

But historically, that was not the dominant approach.

In Barnes v. Osofsky, 373 F.2d 269 (2d Cir. 1967), the Second Circuit, per Judge Friendly, held that even secondary market transactions can be the basis for a Section 11 lawsuit if the securities in play can be "traced" to a registration statement. See id. at 271-73.

4

The Third Circuit implicitly embraced the Barnes approach in Shapiro v. UJB Financial Corp., 964 F.2d 272, 286 (3d Cir. 1992), and In re Suprema Specialties, Inc. Securities Litigation, 438 F.3d 256, 274 n.7 (3d Cir. 2006).

And in 2023, in Slack, the Supreme Court held that "tracing" (as described in Barnes) is a permissible way forward.  See 598 U.S. at 768.

Per the Supreme Court, a plaintiff can make out a claim under Section 11 of the '33 Act by "plead[ing] . . . that he purchased shares traceable to the allegedly defective registration statement[.]"  Id. at 770; see also 15 U.S.C. § 77k(a).

\*   \*   \*

With this background, come back now to the Section 11 claim in this case.

Here, the Plaintiffs allege they bought company stock that is "traceable" to the registration statement issued in connection with the company's IPO.  See Complaint ¶¶ 19-20.

But that assertion stands alone.

No factual information is offered.  Nothing is fleshed out or further specified in the Complaint.  There are no details as to how the stock that was bought might allegedly be "traceable" to the registration statement.

Bottom line: the Plaintiffs' assertion that the stock was "traceable" does not purport to rest on any factual allegations. It is, in essence, a restatement of the traceability requirement, see Slack, 598 U.S. at 770, and an assertion that it has been met.

But under Ashcroft v. Iqbal, 556 U.S. 662 (2009), "bare assertions . . . [that] amount to nothing more than a 'formulaic recitation of the elements'" are not enough to go on.  Id. at 681 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  In essence, that is what the Plaintiffs offer here.

In light of Iqbal, "legal conclusions 'done up' as factual allegations must be put aside."  Badalamenti v. Resideo Techs., Inc., 2024 WL 4661010, at \*11 n.16 (D.N.J. Nov. 4, 2024) (collecting cases).

5

And when they are "put aside" here, there is nothing left. There are no factual allegations that support a necessary part of the Plaintiffs' Section 11 claim: that it is based on the purchase of stocks "traceable" to the registration statement.

In light of this, it would appear that the Section 11 claim must be dismissed.

Before definitively getting there, though, take up a possible wrinkle.

\* \* \*

The wrinkle flows from Suprema, a 2006 decision in which the Third Circuit, addressing an in-the-alternative argument, indicated that a Section 11 claim could go forward because the tracing requirement had been satisfied. See 438 F.3d at 274 n.7.

The Plaintiffs here initially leaned on Suprema, citing it to support the idea that they, too, had pleaded enough as to Section 11. See Brief in Opposition to Joint Motion to Dismiss at 3.

But it is not clear that the Plaintiffs are still sticking to that position. See Plaintiffs' Letter at 1 (May 30, 2024).

And in any event, Suprema is distinguishable.

The reason: in this case, the Plaintiffs pleaded no meaningful factual allegations as to tracing; in Suprema, the plaintiffs did.

First, the Suprema plaintiffs alleged they bought shares on the last day of one offering (the date of which was alleged) and "in" another (the date of which was also alleged). See Suprema, 438 F.3d at 274 n.7.

This presumably moved the ball for the Suprema court. After all, a look to the timing of a stock buy is often at the core of establishing whether it is "traceable" to a registration statement. See, e.g., Barnes, 373 F.2d at 270-71; De Vito v. Liquid Holdings Grp., Inc., 2018 WL 6891832, at \*15 (D.N.J. Dec. 31, 2018); Yang v. Tibet Pharms., Inc., 2015 WL 730036, at \*3 n.4 (D.N.J. Feb. 20, 2015); Feyko v. Yuhe Int'l, Inc., 2013 WL 3467067, at \*2 (C.D. Cal. July 10, 2013); In re Mun. Mortg. & Equity, LLC, Sec. & Derivative Litig., 876 F. Supp. 2d 616, 660 (D. Md. 2012); Kirkwood v. Taylor, 590 F. Supp. 1375, 1378 (D.

6

Minn. 1984), aff'd 760 F.2d 272 (8th Cir. 1985) (table); cf. In re Ariad Pharms., Inc. Sec. Litig., 842 F.3d 744, 756 (1st Cir. 2016); In re Century Aluminum Co. Sec. Litig., 729 F.3d 1104,1106 (9th Cir. 2013); Krim v. pcOrder.com, Inc., 402 F.3d 489, 498 (5th Cir. 2005).

And second, the Suprema plaintiffs alleged they bought shares "from" an underwriter. See Suprema, 438 F.3d at 274 n.7.

This could only have buttressed the inference that the Suprema plaintiffs' shares were subject to Section 11. Why? Because in a typical IPO, "[i]nvestment banks underwrite the offering . . . and then sell[] [the shares] to investors[.]" Slack, 598 U.S. at 761. And courts have therefore routinely suggested that when a stock is bought directly from an underwriter, that weighs in favor of the conclusion that it is "traceable" to a registration statement. See, e.g., Barnes, 373 F.2d at 271; Hawaii Structural Ironworkers Pension Tr. Fund v. AMC Ent. Holdings, Inc., 338 F.R.D. 205, 215 (S.D.N.Y. 2021); Congregation of Ezra Sholom v. Blockbuster, 504 F. Supp. 2d 151, 159 (N.D. Tex. 2007); In re Alamosa Holdings, Inc., 382 F. Supp. 2d 832, 864 (N.D. Tex. 2005); Langert v. Q-1 Corp., 1974 WL 377, at *6 (S.D.N.Y. Mar. 15, 1974); Wolfson v. Solomon, 54 F.R.D. 584, 591 (S.D.N.Y. 1972).

In short, Suprema is distinguishable. Here, there are no factual allegations as to Section 11 tracing. But in Suprema there were --- about when the relevant stock buy was made, and about the entity from which the stock was bought.[4]

---

[4] Note also Shapiro. In that case, the Third Circuit allowed a Section 11 claim to proceed, seemingly based only on an allegation that the plaintiffs purchased "stock . . . 'pursuant to' a . . . registration statement." Shapiro, 964 F.2d at 286. Such an allegation would have been bare, not backed up by any factual allegations. And that makes Shapiro seem like this case. But no party cites Shapiro here, and the Court treats any argument from Shapiro as having been intentionally waived. The lawyers here are especially sophisticated and expert. That suggests that skipping over Shapiro may well have been a conscious choice. And all the more so because Shapiro is unmissable --- it was cited repeatedly in the part of Suprema that the parties themselves reference. See Brief in Opposition to Joint Motion to Dismiss at 3; Defendants' Letter (May 24, 2024) at 2 n.1; Plaintiffs' Letter (May 30, 2024) at 1. Moreover, Shapiro may have been jettisoned by the lawyers because it is arguably not as solid as when it was first decided, and for a reason the Plaintiffs explicitly invoke as to Suprema.

7

\*   \*   \*

In a nutshell: the Plaintiffs' Section 11 claim must be dismissed, and on the allegations here Suprema is no reason not to do so.

\*   \*   \*

Three final loose ends as to the Plaintiffs' '33 Act claims.

First, the Plaintiffs have suggested that, should the Section 11 claim be dismissed, they will seek to replead. See Plaintiffs' Letter (May 30, 2024) at 2 & n.2. For their part, the Defendants have argued any repleading would be improper for various reasons. See Defendants' Letter (May 24, 2024) at 3; Defendants' Letter

---

See Plaintiffs' Letter (May 30, 2024) at 1. In particular, Shapiro was decided before Iqbal --- when bare allegations were sometimes taken as enough to clear pleading hurdles. But after Iqbal, things have shifted. It appears doubtful that standalone allegations (of the sort that passed muster in Shapiro) would now be deemed sufficient. And there may potentially be another issue. The Shapiro court explained that part of why it was landing where it was is that "it is impossible" for plaintiffs to trace their shares "[b]efore discovery takes place." Shapiro, 964 F.2d at 286. But this line of reasoning may be in tension with the Private Securities Litigation Reform Act, which became law three years after Shapiro was decided. The PSLRA provides that "all discovery . . . shall be stayed during the pendency of any motion to dismiss." 15 U.S.C. § 77z-1(b)(1). That is, a plaintiff's allegations must generally be solid enough out of the gate to make it past a motion to dismiss, because discovery will not be available to fill in any blanks. Cf. In re NAHC, Inc. Sec. Litig., 306 F.3d 1314, 1332 (3d Cir. 2002); Cornielsen v. Infinium Cap. Mgmt., LLC, 916 F.3d 589, 601 (7th Cir. 2019). (This said, it is not 100% clear that Shapiro is ultimately irreconcilable with the PSLRA. After all, Suprema is a post-PSLRA case, and it seems to build on the same idea as in Shapiro. See Suprema, 438 F.3d at 274 n.7. And there is an argument, as to which the Court expresses no view, that discovery may indeed be appropriate as to tracing even after the PSLRA. See John C. Coffee, Jr. & Joshua Mitts, Slack v. Pirani and the Future of Section 11 Claims at \*33-38 (2023) (unpublished manuscript) (accessed on the public website of SSRN on December 12, 2024: https://papers.ssrn.com/sol3/papers.cfm?abstract_id=4644888). Bottom line: the Court concludes that any argument from Shapiro was intentionally abandoned here, given the skill of the lawyers, the prominence of the case, and Shapiro's seeming tension with later legal developments.

(June 5, 2024), Exhibit A. All of this can be taken as it comes, and the current dismissal of the Section 11 claim is not with prejudice.

Second, the Plaintiffs have suggested they may walk away from their Section 12 claim. See Plaintiffs' Letter (May 30, 2024) at 3. There is therefore no reason, now, to take up the Defendants' motion to dismiss that claim.

And third, the Plaintiffs have also pressed a Section 15 "control person" claim. See Complaint §§ 167-75. That claim can go forward here only by piggy-backing on a Section 11 claim or Section 12 claim. See Suprema, 438 F.3d at 284; In re Adams Golf, Inc. Sec. Litig., 381 F.3d 267, 273 n.3 (3d Cir. 2004); see also 15 U.S.C. § 77o. But as noted, there is a good deal of flux in this case as to the Plaintiffs' Section 11 and 12 claims. It is therefore premature to address their Section 15 claim.

\*   \*   \*

IT IS on this 12th day of December, 2024, so **ORDERED**.

_____
Michael E. Farbiarz, U.S.D.J.

9