# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

CRAIG J. HOLLAND, Individually and On : \
Behalf of All Others Similarly Situated, :

           Plaintiffs, :

v.                         :   21-cv-948 (MEF) (MAH)

9F INC., LEI SUN, YANJUN LIN, YIFAN : \
REN, CHANGXING XIAO, FLYNN XUXIAN: \
HUANG, IVAN XU, JUNSHENG ZHANG,   :   **ORAL ARGUMENT** \
WING HON CHEUNG, FANGXIONG GONG,:   **REQUESTED** \
DAVID CUI, LEI LIU, SIU FUNG MING,   : \
CREDIT SUISSE SECURITIES (USA) LLC,  : \
HAITONG INTERNATIONAL SECURITIES :   **Motion Date: April 21, 2025** \
COMPANY LIMITED, CLSA LIMITED,   : \
CHINA INVESTMENT SECURITIES      : \
INTERNATIONAL BROKERAGE LIMITED,: \
9F PRIMASIA SECURITIES LIMITED, and  : \
COGENCY GLOBAL INC.,            : \
                                  : \
          Defendants.         :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' JOINT MOTION TO DISMISS THE THIRD AMENDED CLASS ACTION COMPLAINT

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................................. ii

PRELIMINARY STATEMENT ............................................................................. 1

ARGUMENT ........................................................................................................ 4

I.  PLAINTIFFS STILL LACK STANDING FOR THEIR SECTION 11 CLAIMS ................................................................................................... 4

II.  PLAINTIFFS AGAIN FAIL TO PLEAD A MISREPRESENTATION ....... 6

    A.  Plaintiffs Cannot Replead Around 9F's Disclosure of the Specific Facts and Risks that Were Supposedly Omitted ................. 6

        1.  The Offering Documents Disclosed the Relevant Information and Risks Regarding PICC ............................... 6

        2.  No Additional Disclosure Was Required ............................ 8

    B.  The TAC Still Contains Only Conclusory Allegations of an Illegal Scheme Designed to Evade the 2019 Notice ..................... 10

    C.  Plaintiffs' Alleged Scheme Would Not Be Actionable ................... 11

III.  PLAINTIFFS FAIL TO PLEAD SCIENTER ....................................... 12

IV.  PLAINTIFFS AGAIN FAIL TO PLEAD LOSS CAUSATION ............... 13

V.  PLAINTIFFS AGAIN FAIL TO ADEQUATELY ALLEGE THAT THE UNDERWRITER DEFENDANTS WERE NEGLIGENT ............... 14

CONCLUSION ................................................................................................... 15

i

# TABLE OF AUTHORITIES

Page(s)

## CASES

*In re 9F Inc. Securities Litigation*,
    234 A.D.3d 632 (1st Dep't 2025)............................................................7

*Aldridge v. A.T. Cross Corp.*,
    284 F.3d 72 (1st Cir. 2001) ..............................................................12

*American Pipe & Construction Co. v. Utah*,
    414 U.S. 538 (1974)............................................................................4

*Bauer v. Prudential Financial, Inc.*,
    No. 09-1120 (JLL), 2010 WL 2710443 (D.N.J. June 29, 2010) ..................7

*California Public Employees'*
*Retirement System v. ANZ Securities, Inc.*,
    582 U.S. 497 (2017)....................................................................... 1, 4

*In re Campbell Soup Co. Securities Litigation*,
    No. 18-14385 (NLH/JS), 2020 WL 7022655
    (D.N.J. Nov. 30, 2020) ....................................................................9

*De Vito v. Liquid Holdings Group, Inc.*,
    No. 15-6969 (KM) (JBC), 2018 WL 6891832
    (D.N.J. Dec. 31, 2018)..................................................................4, 5

*In re Ferrellgas Partners, L.P. Securities Litigation*,
    764 F. App'x 127 (2d Cir. 2019)........................................................7

*Frank v. Dana Corp.*,
    646 F.3d 954 (6th Cir. 2011) ...........................................................12

*Galati v. Commerce Bancorp, Inc.*,
    220 F. App'x 97 (3d Cir. 2007)..........................................................8

*Gamm v. Sanderson Farms, Inc.*,
    944 F.3d 455 (2d Cir. 2019)............................................................11

*Henry v. Futu Holdings Ltd.*,
No. 2:23 Civ. 03222 (BRM) (CLW), 2024 WL 4285129
(D.N.J. Sept. 25, 2024) ....................................................................................9

*In re Hertz Global Holdings, Inc. Securities Litigation*,
No. 13-7050, 2017 WL 1536223 (D.N.J. Apr. 27, 2017),
*aff'd*, 905 F.3d 106 (3d Cir. 2018)........................................................................9

*Institutional Investors Group v. Avaya, Inc.*,
564 F.3d 242 (3d Cir. 2009) ............................................................................11

*In re Intelligroup Securities Litigation*,
527 F. Supp. 2d 262 (D.N.J. 2007)............................................................ 13, 14

*Miao v. Fanhua, Inc.*,
442 F. Supp. 3d 774 (S.D.N.Y. 2020) ..............................................................10

*National Junior Baseball League v.*
*Pharmanet Development Group Inc.*,
720 F. Supp. 2d 517 (D.N.J. 2010).....................................................................13

*Public Employees' Retirement System of Mississippi v. Amedisys, Inc.*,
769 F.3d 313 (5th Cir. 2014) ............................................................................14

*Southeastern Pennsylvania Transportation*
*Authority v. Orrstown Financial Services Inc.*,
12 F.4th 337 (3d Cir. 2021)..................................................................................5

*In re Suprema Specialties, Inc. Securities Litigation*,
438 F.3d 256 (3d Cir. 2006)..................................................................................2

Defendants respectfully submit this reply memorandum of law in further support of their motion to dismiss the Third Amended Class Action Complaint.

## **PRELIMINARY STATEMENT**

The Opposition (ECF No. 129) confirms that Plaintiffs still have no answers to the defects that have twice led to the dismissal of their claims.[1]  As to the threshold standing issue (the most recent basis for dismissal), Plaintiffs concede that no one with Section 11 standing asserted such a claim before the repose period expired.  That is dispositive.  It is irrelevant whether Lead Plaintiff Wait timely asserted *other* claims.  It likewise does not matter whether Plaintiff Harrison would have had Section 11 standing *if* she had asserted such a claim *before* the repose period expired, because she did not do so.  The Opposition is simply incorrect that *American Pipe* tolling allows Harrison to assert a Section 11 claim after the repose period.  The Supreme Court expressly rejected that argument in *CalPERS*, holding "the *American Pipe* tolling rule does not apply to the three-year bar mandated in §13 [the Securities Act's statute of repose]." *California Pub. Employees' Ret. Sys. v. ANZ Sec., Inc.*, 582 U.S. 497, 510 (2017); *see also id.* at 508 ("[T]he Court repeatedly has stated in broad terms that statutes of repose are not subject to equitable tolling.").  The Securities Act claims again fail on standing alone.

---

[1]  Capitalized terms not defined herein have the meanings ascribed to them in Defendants' Opening Brief, ECF No. 128-1 ("Br.").

Separately, the Opposition fares no better on the substance of Plaintiffs' claims (the basis of Judge Arleo's first dismissal). As to falsity, Plaintiffs cannot plead around the Company's extensive disclosures. 9F disclosed the very information that was allegedly concealed, which precludes all Plaintiffs' claims under any pleading standard.[2] The Opposition also still fails to point to any non-conclusory allegations showing any "illegal and secret" arrangement between 9F and PICC. The TAC continues to rely on the same inadequate sources as the SAC (and Revised SAC), and the Opposition does not even attempt to rebut their facial inadequacy. Instead, Plaintiffs spend much of the Opposition trying to shoehorn their allegations to fit comments Judge Arleo made at an oral argument three complaints ago. But as this Court already recognized, Judge Arleo was "engaged in an oral argument" and her offhand remarks were "in the nature of a back-and-forth with counsel, not a holding." (Ex. D at 50:20-25.[3]) Then and now, Plaintiffs cannot allege that PICC, the PRC government, or anyone else has ever even claimed, let alone established, that 9F's agreement with PICC was illegal.

---

[2]  Defendants maintain that even under *In re Suprema Specialties, Inc. Securities Litigation*, 438 F.3d 256, 272-74 (3d Cir. 2006), Rule 9(b) governs Plaintiffs' Securities Act claims, which sound in fraud (there is no dispute Rule 9(b) applies to the Exchange Act claims). Nevertheless, all of Plaintiffs' claims fail regardless of which pleading standard is applied. (*See* Br. at 19 n.13.)

[3]  Exhibits cited herein are attached to the Certification of Scott D. Musoff, dated February 12, 2025 (ECF No. 128-2).

As to scienter, Plaintiffs have not added any new allegations since the deficient FAC three years ago.  There, Judge Arleo recognized that Plaintiffs plead only "general allegations" that the Individual Defendants "were sort of involved." (Ex. C at 18:25-19:10.)  On the Revised SAC, this Court similarly pressed Plaintiffs on the "whos and the whats and the wheres . . . as to the so-called secret agreement," highlighting the absence of any "allegations that speak in a detailed way to the agreement, which is to say who sat in the room and did this."  (Ex. D at 48:23-24, 50:5-8.)  The TAC adds nothing, and the Opposition merely rehashes the same meritless arguments from the last two rounds of motion to dismiss briefing. Plaintiffs' generic allegations still fall far short of providing a particularized basis for a strong inference that the Individual Defendants acted with intent to defraud investors.

Similarly, the Opposition offers nothing new on loss causation or the Underwriters.  Plaintiffs continue to rely on boilerplate loss causation arguments, despite *no drop* in 9F's stock price when the PICC dispute was announced.  And they still cannot allege any wrongdoing by the Underwriter Defendants.

The TAC is Plaintiffs' *fifth* bite at the apple (after the original complaint, amended complaint, second amended complaint, and "revised" second amended complaint).  They have shown again and again that they cannot state a claim. Enough is enough.  This Action should be dismissed in its entirety with prejudice.

3

## ARGUMENT

### I.   PLAINTIFFS STILL LACK STANDING FOR THEIR SECTION 11 CLAIMS

Plaintiffs distort Defendants' statute of repose argument, (Br. at 6-10), and fail to address the applicable case law.  Instead, Plaintiffs first harp on *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974), but ignore the fundamental difference between that case and the one at hand: *American Pipe*'s holding is about the statute of limitations, not the statute of repose.  This distinction is fatal.  As the *CalPERS* Court emphasized, statutes of limitations and statutes of repose each have a distinct purpose.  *See CalPERS*, 582 U.S. at 504.  While statutes of limitation are designed to encourage plaintiffs to pursue prosecution, statutes of repose "effect a legislative judgment that a defendant should 'be free from liability after the legislatively determined period of time.'"  *Id.* at 504-05.  The cases upon which Plaintiffs rely either (1) predate *CalPERS* or (2) involve a statute of limitations.  Either way, they are inapposite here.  There is no basis to toll the repose period that "create[s] an absolute bar" on Defendants' liability.  *Id.* at 507.

The relation-back doctrine cannot salvage this deficiency.  Plaintiffs fail to distinguish *De Vito v. Liquid Holdings Group, Inc.*, No. 15-6969 (KM) (JBC), 2018 WL 6891832 (D.N.J. Dec. 31, 2018), except to argue that Plaintiff Wait's standing for Exchange Act claims preserves all claims for all class members.  This is incorrect, as *De Vito* makes clear and as Defendants explained in their Opening

4

Brief.  (*See* Br. at 8-10.); *see also De Vito*, 2018 WL 6891832, at *24.  Plaintiffs also incorrectly argue that *Southeastern Pennsylvania Transportation Authority v. Orrstown Financial Services Inc.*, 12 F.4th 337 (3d Cir. 2021) ("*SEPTA*"), overruled *De Vito*.  (*See* Br. 8 at nn.5-6.)  To the contrary, *SEPTA* distinguishes its holding from *De Vito*'s, which remains applicable where "entirely new claims or parties . . . were added after the repose period expired."  *SEPTA*, 12 F.4th at 352 (citing *De Vito*, 2018 WL 6891832, at *22).  That is the case here.  As in *De Vito*, here, "no party asserted a viable claim within the statute-of-repose period."  2018 WL 6891832, at *22.  Harrison cannot "not belatedly join the action as a named plaintiff, asserting a claim that was already nullified by the passage of time."  *Id.* The contrary position that Plaintiffs urge would allow any plaintiff to bring every claim under the sun without regard to standing and then backfill additional named plaintiffs for those claims at any point thereafter, rendering statutes of repose a nullity.  That is not the law, and for good reason.  Because neither Plaintiff asserted a viable Securities Act claim before the repose period expired, the Section 11 and 15 claims should be dismissed with prejudice.

5

## II.   PLAINTIFFS AGAIN FAIL TO PLEAD A MISREPRESENTATION

### A.   Plaintiffs Cannot Replead Around 9F's Disclosure of the Specific Facts and Risks that Were Supposedly Omitted

#### 1.   The Offering Documents Disclosed the Relevant Information and Risks Regarding PICC

Both Plaintiffs' Section 11 and Section 10(b) claims require them to allege an actionable misstatement or omission, but the Opposition fails to salvage any of the TAC's theories—that 9F (1) misled investors about how it changed its business in response to Chinese regulatory developments; (2) concealed the risks of its partnership with PICC; or (3) facilitated loans with total borrowing costs exceeding the 36% limit.  Plaintiffs assert that the relevant disclosures in the Offering Documents "were materially false and misleading because they implied that the full amounts that PICC charged borrowers were insurance premiums to be used for protecting loans and 9F did not charge PICC any service fees from PICC's insurance premiums." (Opp. at 18.)  But the Offering Documents disclosed that 9F "stopped charging service fees from borrowers since April 2019," and instead "charge[d] service fees from financial institutional partners," including PICC. (Ex. A at 35.)  The Opposition offers no reason why these disclosures supposedly did not warn investors that PICC remitted service fees to 9F.  (*See* Opp. at 18-19.) Plaintiffs cannot manufacture a misstatement by simply mischaracterizing the disclosures.  In the parallel New York State action, the appellate court rejected the same argument Plaintiffs make here:

6

> Although the cooperation agreement with PICC is not described in detail, the fact that third parties were collecting fees and that might violate their agreements was, in fact, a disclosed risk. Defendants' failure to disclose the cooperation agreement and failure to specifically name PICC in the risk disclosure does not make the disclosure misleading.

*In re 9F Inc. Sec. Litig.*, 234 A.D.3d 632, 633 (1st Dep't 2025).

Moreover, the Opposition cannot point to any allegations (because there are none) showing that Defendants knew or expected at the time of the IPO that PICC would challenge the Cooperation Agreement months later. The TAC therefore "suffers from a fatal defect: it assumes without sufficient supporting allegations that Defendants knew or should have known that a contractual counterparty would ultimately default on payments owed." *In re Ferrellgas Partners, L.P. Sec. Litig.*, 764 F. App'x 127, 128 (2d Cir. 2019); *see also Bauer v. Prudential Fin., Inc.*, No. 09-1120 (JLL), 2010 WL 2710443, at \*10, \*13 (D.N.J. June 29, 2010) (dismissing claim under Rule 8 where "[p]laintiff [had] not alleged facts to support a claim that . . . as of the date of the Offering, [defendant] knew that losses related to the Joint Venture Litigations were probable").

Plaintiffs claim that the risk disclosures were "also materially false and misleading because they failed to disclose that through its arrangement with PICC, 9F used PICC as a conduit to circumvent Chinese regulatory bans and the borrowing cost for borrowers on 9F's platform frequently exceeded the 36% APR ceiling." (Opp. at 21.) Again, Plaintiffs ignore 9F's extensive disclosures that

7

both detailed its method for calculating fees pursuant to these regulations and warned that there is no "official method for calculating annual interest and fees rates." (Br. at 14; Ex. A at 33.) Moreover, Plaintiffs do not claim that the risk that regulators would find 9F in violation of the 36% cap ever materialized. (Br. at 14.)

### 2.    No Additional Disclosure Was Required

The Opposition similarly fails to establish that any additional disclosure was required under GAAP or Items 105 and 303 of Regulation S-K. (*See* TAC ¶¶ 111, 116.) As to GAAP, the Opposition does not dispute that 9F's reported financial results were accurate. (Opp. at 22.) *See Galati v. Com. Bancorp, Inc.*, 220 F. App'x 97, 102 (3d Cir. 2007). Plaintiffs offer no explanation for how this accurate financial data could be misleading, including as they relate to the Company's dealings with PICC. (*See* Opp. at 22.)

The Opposition also argues that, under GAAP, 9F should have separately disclosed in the Offering Documents that "(1) revenue recognized from its lending contracts with its borrowers that 9F indirectly collected through PICC; (2) the opening and closing balances of receivables from PICC because such receivables are loan facilitation service fees that 9F collected from its borrower through PICC; and (3) contingent liabilities applicable to any financial reporting period when 9F was exposed to the risk that borrowers would assert claims that 9F improperly charged loan fees." (Opp. at 22.) But the Offering Documents reported financial

8

results only through the quarter ended March 31, 2019—*before* PICC began collecting services fees in April 2019.  Thus, there was nothing to "separately disclose" at that time.[4]  In any event, 9F's revenue recognition determinations were inherently subjective.  *See,* e.g., *In re Hertz Glob. Holdings, Inc. Sec. Litig.*, No. 13-7050, 2017 WL 1536223, at *11 (D.N.J. Apr. 27, 2017), *aff'd*, 905 F.3d 106 (3d Cir. 2018).  Plaintiffs cite no authority to the contrary.

Plaintiffs' claims under Items 105 and 303 of SEC Regulation S-K fare no better.  (*See* Opp. at 22-23.)  9F disclosed PICC's risk of nonpayment, and Plaintiffs do not allege facts showing 9F had any reason to suspect (and warn of) anything more specific.  (*See* Br. at 18-19.)  Even if 9F had engaged in an illegal scheme, which it did not, there is no "duty to disclose uncharged, unadjudicated wrongdoing." *Henry v. Futu Holdings Ltd.*, No. 2:23 Civ. 03222 (BRM) (CLW), 2024 WL 4285129, at *17 (D.N.J. Sept. 25, 2024).  Plaintiffs attempt to distinguish *Futu* by claiming the court there found "that the company adequately warned of the risks alleged." (Opp. at 26 n.6.)  First, for the reasons explained in the Opening Brief and herein, the Offering Documents did expressly disclose these risks.  Second, Plaintiffs have no response to the more meaningful difference between the

---

[4]   Separately, the Opposition ignores Defendants' argument that Plaintiffs have not established PICC is a "customer" within the meaning of ASC 606 (Br. at 16), and thus concedes the point.  *See In re Campbell Soup Co. Sec. Litig.*, No. 18-14385 (NLH/JS), 2020 WL 7022655, at *5 n.2 (D.N.J. Nov. 30, 2020).

case at hand and *Futu* that makes Defendants' argument even more compelling: Here, unlike in *Futu*, no Chinese government authority ever even accused 9F of illegal practices.

### B. The TAC Still Contains Only Conclusory Allegations of an Illegal Scheme Designed to Evade the 2019 Notice

Seemingly recognizing these deficiencies, Plaintiffs zero in on a different claim: that 9F charged borrowers over 36% APR in violation of Circular 141. (Opp. at 19-22.)  Plaintiffs assert that "additional details like those alleged in the TAC would render Plaintiffs' claims actionable." (Opp. at 20.)  The problem with that assertion is that Plaintiffs fail to point to any details in the TAC supporting this theory.  The TAC does not add a single non-conclusory fact addressing the Court's concerns about Plaintiffs' allegations of the alleged kick-back portion of the scheme.  Plaintiffs continue to rely solely on a purported expert cited in *The China Securities Journal*.  (Opp. at 7.)  But Plaintiffs fail to address the well-accepted proposition that "statements made by anonymous—and often vaguely described—interviewees, with whom plaintiff's counsel has not had contact, but whom counsel has learned about secondhand . . . . are insufficiently particular." *Miao v. Fanhua, Inc.*, 442 F. Supp. 3d 774, 797 (S.D.N.Y. 2020).  Plaintiffs once again fail to allege that the purported expert—or FE1 for that matter—was in a position to know the relevant facts to be able to speak reliably about the purported scheme.  Because the TAC failed to remedy the deficiencies posed by these sources recycled from the

10

FAC and SAC, this Court should similarly "discount [these sources] steeply." *Institutional Invs. Grp. v. Avaya, Inc.*, 564 F.3d 242, 263 (3d Cir. 2009).

Moreover, none of these allegations pertains to the amount PICC purportedly kicked back to 9F. Even taking Plaintiffs' allegations at face value, they fail to establish that 9F violated the 36% cap because Plaintiffs artificially inflated their APR calculations by not using the full loan amounts. (*See* Br. at 28-29.) The Opposition urges the Court to ignore this issue as a premature factual dispute, but Plaintiffs do not dispute that their APR calculations are artificially inflated, which is apparent on the face of the TAC. (Opp. at 28 n.7.)

## C.    Plaintiffs' Alleged Scheme Would Not Be Actionable

Finally, even assuming arguendo that PICC "kicked back" a portion of its insurance premiums to 9F, Plaintiffs fail to allege facts showing that this was designed to be an end run around the 2019 Notice or was otherwise unlawful. (Opp. at 26-27.) The TAC does not allege that PICC ever claimed that "9F used PICC as a conduit to circumvent regulatory bans on collecting fees from borrowers that exceeded 36%." (*See* TAC ¶ 109.) Plaintiffs' claims that the June 12, 2020 Form 6-K and Form NT 20-F were false or misleading for failing to disclose that 9F supposedly used PICC as a conduit to circumvent the 2019 Notice therefore also fail. (Opp. at 22-23.) *See Gamm v. Sanderson Farms, Inc.*, 944 F.3d 455, 458 (2d Cir. 2019) ("[W]hen a complaint claims that statements were rendered false or

11

misleading through the nondisclosure of illegal activity, the facts of those underlying illegal acts must also be pleaded with particularity.").

## III.    PLAINTIFFS FAIL TO PLEAD SCIENTER

The Opposition does not dispute that the TAC contains no new scienter allegations. (*See* Opp. at 32-36.) As to motive, Plaintiffs rehash the same generic and insufficient allegations that Defendants "beneficially owned 9F shares or obtained proceeds through the sale of their shares in the Company's IPO." (Opp. at 34). The Opposition asserts that Defendants' "financial incentives to exaggerate earnings go far beyond the usual arrangements of compensation based on the company's earnings" (Opp. at 34), yet Plaintiffs do not allege Defendants had any unusual incentives or exaggerated earnings.[5]

Plaintiffs' allegations of recklessness or conscious misbehavior are equally deficient. (Br. at 34-35.) Contrary to Plaintiffs' assertion, Defendants never "admitted" that 9F entered into an illegal arrangement with PICC (TAC ¶¶ 88, 178; Opp. at 35-36), and Plaintiffs do not identify any "report[] or statement[]" saying

---

[5]    Plaintiffs' cases are inapposite. *See Aldridge v. A.T. Cross Corp.*, 284 F.3d 72, 83-84 (1st Cir. 2001) (holding compensation allegations "alone [are] not and cannot be enough to establish scienter," but the complaint alleged sufficient "particular financial incentives" including, among other things, that "[t]he exercise price of the individual defendants' stock options was lowered . . . just before the introduction of the new product line"); *Frank v. Dana Corp.*, 646 F.3d 954, 960-62 (6th Cir. 2011) (scienter pled where financial incentives included "millions in bonuses" tied to company performance).

otherwise. *See In re Intelligroup Sec. Litig.*, 527 F. Supp. 2d 262, 286 (D.N.J. 2007). Critically, neither FE1 nor any other alleged source "claims to have met, emailed with, spoken to, or otherwise heard or read anything by" any of the Defendants regarding PICC. *Nat'l Junior Baseball League v. Pharmanet Dev. Grp. Inc.*, 720 F. Supp. 2d 517, 555 (D.N.J. 2010). Plaintiffs also fail to allege any GAAP violation (*see* supra at 6-7), which would be insufficient to plead scienter in any event. *See id.* at 557 ("[C]ourts have uniformly held that allegations of scienter based on GAAP violations do not create the requisite strong inference of scienter unless plaintiffs' complaint alleges 'more.'"). Lastly, the resignations of certain Individual Defendants provide no support for inferring scienter because they occurred months before the PICC dispute was disclosed and Plaintiffs allege no facts indicating the resignations had anything to do with PICC. (Opp. at 36.) In short, considering the TAC holistically, Plaintiffs' theory of fraud does not make sense on the facts alleged, let alone present a cogent or compelling inference of scienter.

## IV. PLAINTIFFS AGAIN FAIL TO PLEAD LOSS CAUSATION

Plaintiffs cannot dispute that there was no decline in 9F's ADS price the first *two* times that the PICC dispute was disclosed. While the Opposition argues that the *third* disclosure about the PICC dispute (on June 17, 2020) revealed new information—namely, that 9F stopped using PICC to insure new loans in

13

November 2019 and suspended its cooperation with PICC entirely in December 2019 (Opp. at 37-39)—these later developments did not render any statement in the Offering Documents false or misleading at the time.  Similarly, Plaintiffs allege no facts indicating that the June 22, 2020 announcement that 9F's Chief Risk Officer was shifting to another role (which Plaintiffs continue to mischaracterize as a "removal") had anything to do with the PICC dispute, let alone corrected any prior misrepresentation or omission by 9F.  (Ex I at 2.)  *See Intelligroup*, 527 F. Supp. 2d at 328 (no loss causation given plaintiffs' "failure to allege an actual link" between the alleged corrective disclosures and misstatement).[6]

## V.  PLAINTIFFS AGAIN FAIL TO ADEQUATELY ALLEGE THAT THE UNDERWRITER DEFENDANTS WERE NEGLIGENT

Finally, the Opposition fails to engage with the Opening Brief's arguments concerning the generality of the TAC's allegations regarding the Underwriter Defendants.  (TAC ¶¶ 46, 118, 134-35.)  Nor does it engage with the TAC's absence of allegations of how the Underwriter Defendants could have discovered the alleged "illegal and secret" agreement.  Instead, Plaintiffs point to a TAC

---

[6]  Plaintiffs' cited case is not to the contrary and in fact confirms that "the announcement of the resignations . . . does not in and of itself constitute a corrective disclosure."  *Pub. Emps.' Ret. Sys. of Miss. v. Amedisys, Inc.*, 769 F.3d 313, 322 (5th Cir. 2014) ("*Amedisys*").  Moreover, in *Amedisys*, the executives fully resigned from the company, whereas here, the prior CRO continued working at 9F in other roles.  (*See* Ex. I at 2.)

paragraph regarding what underwriters "must" and "should" do (TAC ¶ 129), without a single particularized reference to what they *did* do or failed to do. The TAC's broad statements consequently simply mirror the same insufficient and conclusory allegations Plaintiffs raised in the SAC. (Br. at 39-40.) Because Plaintiffs cannot allege facts showing that the Underwriter Defendants were negligent in failing to uncover the alleged misstatements, the claims against them should be dismissed.[7]

## **CONCLUSION**

As demonstrated above, and in light of Plaintiffs' multiple failed opportunities to state a claim, the TAC should be dismissed in its entirety with prejudice.

---

[7]  Plaintiffs' claims for control person liability under Section 15 and Section 20(a) still fail due to their failure to plead a primary claim against any Defendant.

Dated:    April 11, 2025

Respectfully submitted,

SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP

 /s/ *Scott D. Musoff*
Scott D. Musoff
(scott.musoff@skadden.com)
Robert A. Fumerton (*pro hac vice*)
(robert.fumerton@skadden.com)
Michael C. Griffin (*pro hac vice*)
(michael.griffin@skadden.com)
One Manhattan West
New York, NY 10001
Telephone: (212) 735-3000
Facsimile: (212) 735-2000

*Attorneys for Defendants 9F Inc., 9F Primasia Securities Limited, Cogency Global Inc., Lei Sun, Yanjun Lin, Yifan Ren, Changxing Xiao, Flynn Xuxian Huang, Ivan Xu, Fangxiong Gong, David Cui, Lei Liu and Siu Fung Ming*

DUGHI, HEWIT & DOMALEWSKI, P.C.

/s/ *Craig A. Domalewski*
Craig A. Domalewski
Scott A. Hall
340 North Avenue
Cranford, New Jersey 07016
Telephone: (908) 272-0200

CAHILL GORDON & REINDEL LLP

/s/ *Sheila A. Ramesh*
David G. Januszewski (*pro hac vice*)
Sheila C. Ramesh (*pro hac vice*)
32 Old Slip
New York, NY 10005
Telephone: (212) 701-3000
Facsimile: (212) 269-5420 (fax)

*Attorneys for Defendants Credit Suisse Securities (USA) LLC, China Investment Securities International Brokerage Limited, CLSA Limited and Haitong International Securities Company Limited*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the Reply Memorandum of Law in Further Support of Defendants' Joint Motion to Dismiss the Third Amended Class Action Complaint was filed electronically with the United States District Court for the District of New Jersey through the Court's ECF System on this date.  The Notice of Electronic Filing constitutes service on all parties under Rule 14(b)(1) of this Court's ECF Policies and Procedures listed in Local Civil Rule 5.2.

Dated: April 11, 2025

/s/ *Scott D. Musoff*
Scott D. Musoff