**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| CRAIG J. HOLLAND, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>9F INC., *et al.*,<br><br>Defendants. | Case No: 2:21-cv-00948-MEF-ADS<br><br>**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION AND MOTION FOR: (I) PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; (II) CERTIFICATION OF THE SETTLEMENT CLASS; AND (III) APPROVAL OF NOTICE OF SETTLEMENT** |

# TABLE OF CONTENTS

I. INTRODUCTION ........................................................................ 1

II. SUMMARY OF THE LITIGATION AND PROCEDURAL HISTORY ...... 1

A. Nature of the Action ........................................................................ 1

B. Initial Complaint and Lead Plaintiff Process ..................................... 2

C. Lead Counsel's Investigation and the Amended Complaint ................ 3

D. The Court Grants Defendants' First Motion to Dismiss ....................... 3

E. Lead Counsel's Investigation and the Second Amended Complaint .... 4

F. Briefing Related to the SAC and Revised SAC .................................. 4

G. Lead Counsel files the Third Amended Complaint ............................. 7

H. Briefing Related to the TAC ............................................................. 7

I. Mediation and Settlement Efforts ...................................................... 7

III. STANDARDS FOR PRELIMINARY APPROVAL ..................................... 8

IV. ARGUMENT ........................................................................ 12

A. The Settlement is Fair, Reasonable, and Adequate Considering the Rule 23(e)(2) Factors and Remaining *Girsh* Factors and Warrants Preliminary Approval ........................................................................ 12

1. Plaintiffs and Counsel Adequately Represented the Settlement Class ........................................................................ 12

2. The Settlement is the Result of Good Faith Arm's Length Negotiations by Informed Counsel Who Were Aware of the Risks of the Litigation ........................................................................ 13

3. The Settlement is an Excellent Result of the Settlement Class Considering the Benefits of the Settlement and the Risks of Continued Litigation ........................................................................ 14

(a) Complexity, Expense, and Duration of Litigation .........14

(b) Risks of Establishing Liability and Damages.................16

(c) Risks of Maintaining Class Action Status......................21

(d) Range of Reasonableness Considering the Best Possible Recovery and Attendant Risks of Litigation ..................21

(e) Rule 23(e)(2)(C) ..........................................................23

(f) The Settlement Treat All Members of the Settlement Class Equitably Relative to Each Other .........................25

(g) The Remaining *Grish* Factors Either Weigh in Favor of Preliminary Approval or Are Neutral.............................26

B. Certification of the Settlement Class for Settlement Purposes is Appropriate..........................................................................27

1. The Settlement Class Satisfies the Requirement of Rule 23(a) ..........................................................................28

2. The Settlement Class Satisfies the Requirements of Rule 23(b)(3) ......................................................................30

3. The Court Should Appoint Lead Counsel as Counsel for the Settlement Class..........................................................32

C. The Court Should Approve the Proposed Form and Method of Notice ..........................................................................33

V. PROPOSED SCHEDULE OF EVENTS ......................................34

VI. CONCLUSION..........................................................................35

# TABLE OF AUTHORITIES

CASES

*Alves v. Main*,
2012 WL 6043272 (D.N.J. Dec. 4, 2012) .......... 14

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) .......... 27, 30, 31

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
568 U.S. 455 (2013) .......... 30

*Ark. Teacher Ret. Sys. v. Goldman Sachs Grp., Inc.*,
77 F.4th 74 (2d Cir. 2023) .......... 21

*Becker v. Bank of New York Mellon Trust Co., N.A.*,
2018 WL 6727820 (E.D. Pa. Dec. 21, 2018) .......... 24

*Beltran v. Sos Ltd.*,
2023 WL 319895 (D.N.J. Jan. 3, 2023) .......... *passim*

*Castro v. Sanofi Pasteur, Inc.*,
2017 WL 4776626 (D.N.J. Oct. 23, 2017) .......... 11

*Chatelain v. Prudential-Bache Sec., Inc.*,
805 F. Supp. 209 (S.D.N.Y. 1992) .......... 21

*Christine Asia Co., Ltd. v. Yun Ma*,
2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) .......... 18, 19

*City of Sterling Heights Gen. Emps.' Ret. Sys. v. Prudential Fin., Inc.*,
2015 WL 5097883 (D.N.J. Aug. 31, 2015) .......... 28, 29

*Ehrheart v. Verizon Wireless*,
609 F.3d 590 (3d Cir. 2010) .......... 9

*Fernandez v. DouYu Int'l Holdings Ltd.*,
2025 WL 972836 (D.N.J. Mar. 31, 2025) .......... *passim*

*Girsh v. Jepson*,
521 F.2d 153 (3d Cir. 1975) .......... 10, 11

*Glickenhaus & Co. v. Household Int'l, Inc.*,
787 F.3d 408 (7th Cir. 2015) .......... 20

*Gross v. GFI Group, Inc.*,
784 F. App'x. 27 (2d Cir. 2019) .......... 18

*Huffman v. Prudential Ins. Co. of Am.*,
2019 WL 1499475 (E.D. Pa. Apr. 5, 2019) .......... 11

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
298 F.R.D. 171 (S.D.N.Y. 2014) .......... 33

*In re Apple Comput. Sec. Litig.*,
1991 WL 238298 (N.D. Cal. Sept. 6, 1991) .......... 20

*In re BankAtlantic Bancorp, Inc.*,
2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) .......... 20

*In re Datatec Sys., Inc. Sec. Litig.*,
2007 WL 4225828 (D.N.J. Nov. 28, 2007) .......... 19

*In re Eros Int'l plc Sec. Litig.*,
2023 WL 8527135, at *2 D.N.J. Nov. 28, 2023) .......... 12

*In re Heckmann Corp. Sec. Litig.*,
2013 WL 2456104 (D. Del. June 6, 2013) .......... 31

*In re Indep. Energy Holdings PLC Sec. Litig.*,
2003 WL 22244676 (S.D.N.Y. Sept. 29, 2003) .......... 19

*In re Merck & Co. Sec. Litig.*,
432 F.3d 261 (3d Cir. 2005) .......... 30

*In re Mfrs. Life Ins. Co. Premium Litig.*,
1998 WL 1993385 (S.D. Cal. Dec. 21, 1998) .......... 23

*In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*,
148 F.3d 283(3d Cir. 1998) ....................................................................11

*In re Signet Jewelers Ltd. Sec. Litig.*,
2020 WL 4196468 (S.D.N.Y. July 21, 2020)...................................................22

*In re Viropharma Inc. Sec. Litig.*,
2016 WL 312108 (E.D. Pa. Jan. 25, 2016) .......................................................13

*In re Vivendi Universal, S.A. Sec. Litig.*,
284 F.R.D. 144 (S.D.N.Y. 2012)......................................................................22

*In re Warfarin Sodium Antitrust Litig.*,
391 F.3d 516 (3d Cir. 2004) ........................................................................9, 27

*In re Xcel Energy, Inc. Sec., Derivative & "ERISA" Litig.*,
364 F. Supp. 2d 980 (D. Minn. 2005) ..............................................................17

*Janus Cap. Grp., Inc. v. First Derivative Traders*,
564 U.S. 135 (2011) .........................................................................................20

*Kanefsky v. Honeywell Int'l Inc.*,
2022 WL 1320827 (D.N.J. May 3, 2022) .........................................................25

*Lusk v. Five Guys Enters. LLC*,
2022 WL 4791923 (E.D. Cal. Sept. 30, 2022) ...................................................14

*Macquarie Infrastructure Corp. v. Moab Partners, L. P.*,
601 U.S. 257 (2024) ...........................................................................................6

*Neale v. Volvo Cars of N. Am., LLC*,
794 F.3d 353 (3d Cir. 2015) ..............................................................................30

*Oliver v. BMW of N.A., LLC*,
2021 WL 870662 (D.N.J. Mar. 8, 2021) ...........................................................27

*Pozzi v. Smith*,
952 F. Supp. 218 (E.D. Pa. 1997).....................................................................27

*Reyes v. Netdeposit, LLC*,
802 F.3d 469 (3d Cir. 2015) ....................................................................28

*Robbins v. Koger Props., Inc.*,
116 F.3d 1441 (11th Cir. 1997) ..............................................................19

*Roofer's Pension Fund v. Papa*,
333 F.R.D. 66 (D.N.J. 2019) ..................................................................29, 31

*Yaeger v. Subaru of Am.*,
2016 WL 4541861 (D.N.J. Aug. 31, 2016) ..............................................27

<u>RULES</u>

Fed. R. Civ. P. 23 .................................................................................*passim*

# I. INTRODUCTION

After more than five years of hard-fought litigation, the Parties[1] have agreed to settle all claims in the Action in exchange for a non-reversionary cash payment of $6.5 million. The Settlement is an excellent result for the Settlement Class under the circumstances, and it was secured in a procedurally fair manner. Moreover, securities class actions are routinely certified for the purpose of effectuating a settlement. Preliminary approval is, therefore, proper under Rule 23(e)(1) of the Federal Rules of Civil Procedure.

# II. SUMMARY OF THE LITIGATION AND PROCEDURAL HISTORY

## A. Nature of the Action

This is a securities class action on behalf of purchasers of the American Depositary Shares ("ADSs") of 9F Inc. ("9F" or the "Company") from August 14, 2019 to September 29, 2020, inclusive ("Settlement Class Period"). Plaintiffs bring claims pursuant to: (1) Sections 11 and 15 of the Securities Act of 1933 ("Securities Act") for purchasers of 9F ADSs pursuant or traceable to the Initial Public Offering ("IPO") registration statement; and (2) Sections 10(b) and 20(a) of the Securities

[1] Unless otherwise defined, all capitalized terms herein have the same meanings as set forth in the Stipulation and Agreement of Settlement dated October 16, 2026 (the "Stipulation"), which is attached as Exhibit 1 to the accompanying Declaration of Ex Kano S. Sams II ("Sams Declaration"). All references to "Ex. _" are to exhibits to the Sams Declaration.

Exchange Act of 1934 ("Exchange Act") for purchasers of 9F ADSs during the Settlement Class Period.

At the time of the IPO, 9F was an online peer-to-peer lending intermediary platform in China. On its platform, 9F's institutional funding partners lent money to individual borrowers through 9F's loan products and 9F charged service fees for facilitating these loans. Starting in 2015, China prohibited the amount of interest and fees that lenders charged borrowers from exceeding 36% and prohibited lending intermediaries from charging fees from borrowers. As alleged in the complaint, 9F, however, subsequently partnered with Property and Casualty Company Limited ("PICC") "to circumvent" these regulations to continue collecting loan facilitation service fees ***indirectly*** from borrowers. Specifically, 9F and PICC purportedly agreed that 95% of the funds that PICC collected would be "disguised" as insurance premiums. These premiums, however, were loan facilitation service fees that PICC remitted back to 9F and failed to disclose to investors. Once the truth emerged, 9F's ADS share price plummeted, causing significant losses for investors.

### B. Initial Complaint and Lead Plaintiff Process

On January 20, 2021, a putative class action complaint was filed in this Court styled *Holland v. 9F Inc. et al.*, Case Number 2:21-cv-00948-MEF-MAH. By order dated October 13, 2021, the Court appointed John S. Wait to serve as Lead Plaintiff for the Action ("Lead Plaintiff") and approved Lead Plaintiff's selection of Glancy

Prongay & Murray LLP (n/k/a Glancy Prongay Wolke & Rotter LLP) to serve as Lead Counsel for the proposed class and Carella, Byrne, Cecchi, Olstein, Brody & Agnello, P.C. ("Carella Byrne") as Liaison Counsel for the class.

### C. Lead Counsel's Investigation and the Amended Complaint

After substantial investigation, on January 3, 2022, Lead Plaintiff filed the Amended Class Action Complaint for Violations of the Federal Securities Laws ("Complaint") asserting claims pursuant to the Securities Act, the Exchange Act, and Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder.

### D. The Court Grants Defendants' First Motion to Dismiss

On March 4, 2022, Defendants filed a joint motion to dismiss the Complaint. On April 4, 2022, Lead Plaintiff filed his opposition to the motion to dismiss. On April 18, 2022, Defendants filed their reply in support of the motion to dismiss.

On November 8, 2022, Judge Madeline Cox Arleo issued an order scheduling oral argument on Defendants' joint motion to dismiss for November 28, 2022. On November 28, 2022, Judge Arleo held oral argument on Defendants' joint motion to dismiss and issued an order the same day dismissing the Complaint but granting leave to amend.

### E. Lead Counsel's Investigation and the Second Amended Complaint

After additional substantial investigation, on February 1, 2023, Plaintiffs filed the Second Amended Class Action Complaint for Violations of the Federal Securities Laws (the "SAC").

### F. Briefing Related to the SAC and Revised SAC

On April 3, 2023, Defendants filed a joint motion to dismiss the SAC. On May 3, 2023, Plaintiffs filed their opposition to Defendants' joint motion to dismiss. On May 17, 2023, Defendants filed their reply in support of the joint motion to dismiss.

On May 24, 2023, the Court issued an order reassigning the case to Judge Michael E. Farbiarz. On December 27, 2023, Judge Farbiarz issued an order indicating that CLSA Limited ("CLSA") could not be properly served in the United States and inquiring whether Plaintiffs would serve CLSA through the Hague Convention on Service Abroad.

On January 12, 2024, Plaintiffs filed a letter indicating that they intended to serve CLSA through the Hague Convention. On January 23, 2024, the Court issued an order denying CLSA's motion to dismiss for failure to effect proper service.

On January 26, 2024, the Court issued an order requiring the Parties to state for purposes of deciding Defendants' motion to dismiss: (1) whether Chinese law makes it very difficult to enforce agreements that, in large part, envision illegal

conduct; and (2) whether Chinese law would have controlled the question of whether the alleged 9F/PICC agreement was enforceable. On February 2, 2024, the Parties submitted a letter to the Court stating their positions.

On February 2, 2024, the Court issued an order setting forth a briefing schedule on Plaintiffs' proposed amendment to the SAC with respect to: (1) whether Chinese law makes it very difficult to enforce agreements that, in large part, envision illegal conduct; and (2) whether Chinese law would have controlled the question of whether the alleged 9F/PICC agreement was enforceable. Plaintiffs submitted letter briefing to the Court regarding their proposed amendment to the SAC on February 9, 2024. On February 16, 2024, Defendants submitted letter briefing to the Court regarding their position, and on February 21, 2024, Plaintiffs submitted additional letter briefing. On February 22, 2024, the Court issued an order granting Plaintiffs' proposed amendment to the SAC, and on February 22, 2024, Plaintiffs filed their Revised SAC.

On March 7, 2024, Defendants jointly moved to dismiss the Revised SAC. On March 18, 2024, Plaintiffs filed their opposition to Defendants' motion to dismiss, and on March 25, 2024, Defendants filed their reply.

On April 12, 2024, the Court issued an order requesting letter briefing with respect to any potential impact on the case of the Supreme Court's decision in

*Macquarie Infrastructure Corp. v. Moab Partners, L. P.*, 601 U.S. 257 (2024). The Parties responded on April 18, 2024.

On May 5, 2024, the Court issued an order scheduling oral argument for Defendants' joint motion to dismiss the Revised SAC. On May 21, 2024, the Court held oral argument on Defendants' joint motion to dismiss. That same day, the Court issued an order requesting letter briefing regarding whether Plaintiffs have standing under the Securities Act.

On May 24, 2024, Defendants submitted letter briefing to the Court on the issue of whether Plaintiffs have standing under the Securities Act. On May 30, 2024, Plaintiffs submitted letter briefing responding to the Court's inquiry, and on June 3, 2024, Defendants submitted additional letter briefing. On June 5, 2024, Defendants requested permission to submit supplemental briefing, and on June 6, 2024, the Court granted permission to submit supplemental briefing. On June 10, 2024, Plaintiffs submitted supplemental briefing to the Court on the issue of whether Plaintiffs have standing under the Securities Act.

On December 12, 2024, the Court issued an order granting in part Defendants' motion to dismiss. The Court's order focused exclusively on standing under the Securities Act and held that additional allegations were necessary to adequately allege standing. The Court also issued an order requesting letter briefing on the propriety of leave to amend to allege additional facts to adequately allege standing.

On December 16, 2024, Plaintiffs submitted letter briefing to the Court on the propriety of leave to amend to allege additional facts to adequately allege standing under the Securities Act. On December 18, 2024, Defendants submitted letter briefing responding the Court's inquiry, and on December 19, 2024, the Court issued an order granting Plaintiffs' request to file an amended complaint solely with respect to facts related to standing under the Securities Act.

### G. Lead Counsel files the Third Amended Complaint

On December 23, 2024, Plaintiffs filed their Third Amended Class Action Complaint for Violations of the Federal Securities Laws ("TAC") adding amendments regarding standing, dropping the Section 12 claim, and adding a named plaintiff in addition to the court appointed Lead Plaintiff.

### H. Briefing Related to the TAC

On February 12, 2025, Defendants filed a joint motion to dismiss the TAC. On March 27, 2025, Plaintiffs filed their opposition to Defendants' joint motion to dismiss, and on April 11, 2025, Defendants filed their reply.

### I. Mediation and Settlement Efforts

On November 10, 2025, the Court issued an order regarding Defendants' joint motion to dismiss the TAC, stating that "the issues raised here are potentially difficult, and how they are resolved could potentially make an important, bottom-line difference in this case." The Court stated further that "thinking the issues

through will require meaningful additional legal briefing" but "before directing the parties to invest more time, the Court's view is that it would be beneficial to refer the parties to the United States Magistrate Judge, with an eye to determining whether it may be possible to resolve this matter without further litigation."

On November 19, 2025, Magistrate Judge Michael A. Hammer issued an order setting an in-person settlement conference for February 24, 2026. On February 19, 2026, Judge Hammer issued an order rescheduling the settlement conference to April 2, 2026.

On April 2, 2026, the Parties participated in a settlement conference with Judge Hammer. Plaintiffs and Defendants submitted extensive mediation statements that addressed, among other things, issues related to liability and damages. The session ended without an agreement being reached, however, Judge Hammer continued to work with the Parties. Following subsequent negotiations, Judge Hammer made a double-blind mediator's recommendation to resolve the Action for $6,500,000 in cash for the benefit of the Settlement Class. On April 7, 2026, the Parties accepted Judge Hammer's proposal.

## III. STANDARDS FOR PRELIMINARY APPROVAL

In the Third Circuit, there is a "strong presumption in favor of voluntary settlement agreements," which is "especially strong in class actions and other complex cases where substantial judicial resources can be conserved by avoiding

formal litigation." *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594 (3d Cir. 2010); *see also In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("[T]here is an overriding public interest in settling class action litigation, and it should therefore be encouraged.").

A class action settlement must be presented to the Court for approval, and it should be approved if the Court finds it "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).[2] Rule 23(e)(1) provides that preliminary approval should be granted where "the parties show[] that the Court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." *Id.* Rule 23(e)(2)—which governs final approval— requires courts to consider the following questions in determining whether a proposed settlement is fair, reasonable, and adequate:

(A) have the class representatives and class counsel adequately represented the class;

(B) was the proposal negotiated at arm's-length;

(C) is the relief provided for the class adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

[2] Unless otherwise stated, all emphasis is added and all internal quotations and citations are omitted.

(iii) the terms of any proposed award of attorneys' fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) does the proposal treat class members equitable relative to each other.

Factors (A) and (B) "identify matters . . . described as procedural concerns, looking to the conduct of the litigation and of the negotiations leading up to the proposed settlement," while factors (C) and (D) "focus on . . . a substantive review of the terms of the proposed settlement" (*i.e.*, "[t]he relief that the settlement is expect to provide to class members"). Advisory Committee Notes to 2018 Amendments (324 F.R.D. 904, at 919).

The four factors set forth in Rule 23(e)(2) are not intended to "displace" any factor previously adopted by the courts, but "rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." *Id*. at 918. The Third Circuit's factors enumerated in *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975) (certain of which overlap with Rule 23 (e)(2)) are, therefore, still relevant:

> (1) the complexity, expense and likely duration of the litigation … ; (2) the reaction of the class to the settlement… [3]; (3) the stage of the proceedings and the amount of discovery completed… ; (4) the risks of establishing liability… ; (5) the risks of establishing damages… ; (6) the risks of maintaining the class action through the trial … ; (7) the ability of the defendants to withstand a greater judgment; (8) the range

[3] The Court does not yet have the benefit of the Settlement Class's reaction because notice of the proposed Settlement has not yet been provided to the Settlement Class.

> of reasonableness of the settlement fund in light of the best possible recovery … ; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Girsh*, 521 F.2d at 157 (alterations in original); *see also, e.g.*, *Huffman v. Prudential Ins. Co. of Am.*, 2019 WL 1499475, at *3-5 (E.D. Pa. Apr. 5, 2019) (granting final approval after analysis of Rule 23(e)(2) and *Girsh* factors).

As set forth below, the proposed Settlement satisfies the criteria for preliminary approval under the Rule 23(e)(2) factors, as well as the non-duplicative *Girsh* factors.[4]

[4] The court in *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283(3d Cir. 1998) held that "it may be useful to expand the traditional *Girsh* factors to include, when appropriate, these factors among others: the maturity of the underlying substantive issues, as measured by experience in adjudicating individual actions, the development of scientific knowledge, the extent of discovery on the merits, and other factors that bear on the ability to assess the probable outcome of a trial on the merits of liability and individual damages; the existence and probable outcome of claims by other classes and subclasses; the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved—or likely to be achieved—for other claimants; whether class or subclass members are accorded the right to opt out of the settlement; whether any provisions for attorneys' fees are reasonable; and whether the procedure for processing individual claims under the settlement is fair and reasonable." *Id.* at 323. However, courts in this district have held that it is unnecessary to address these permissive factors. *See Fernandez v. DouYu Int'l Holdings Ltd.*, 2025 WL 972836, at *8 (D.N.J. Mar. 31, 2025) ("The Court does not review the *Prudential* factors in detail in this decision."); *Beltran v. Sos Ltd.*, 2023 WL 319895, at *6 (D.N.J. Jan. 3, 2023), *report and recommendation adopted*, 2023 WL 316294 (D.N.J. Jan. 19, 2023) ("Here, most of the *Prudential* considerations are immaterial and do not require discussion."); *Castro v. Sanofi Pasteur, Inc.*, 2017 WL 4776626, at *6 (D.N.J. Oct. 23, 2017) ("The Court does not have to perform analysis on each *Prudential* factor"). Nevertheless, to the extent that certain *Prudential* factors apply here, they are addressed herein.

## IV. ARGUMENT

### A. The Settlement is Fair, Reasonable, and Adequate Considering the Rule 23(e)(2) Factors and Remaining *Girsh* Factors and Warrants Preliminary Approval

#### 1. Plaintiffs and Counsel Adequately Represented the Settlement Class

Fed. R. Civ. P. 23(e)(2)(A) requires the Court to consider whether the "class representatives and class counsel have adequately represented the class." Plaintiffs and their counsel have done so here. First, Plaintiffs' claims are typical of, and coextensive with, the claims of the Settlement Class, and they have no antagonistic interests. Indeed, Plaintiffs and the Settlement Class suffered substantial losses because of Defendants' allegedly wrongful conduct. Thus, Plaintiffs' interest in obtaining the largest possible recovery is aligned with the other Settlement Class Members. *See Fernandez*, 2025 WL 972836, at *6 (finding plaintiff to be adequate because they "have been harmed in substantially the same way as all class members, there are no identifiable conflicts between their claims and those of the class at large, and they have ably represented the class as evidenced by this settlement.").

Second, Plaintiffs retained as counsel GPWR, The Rosen Law Firm P.A. ("Rosen"), and Carella Byrne, firms whose attorneys are highly experienced in securities litigation and who have a long and successful track record of representing investors in such cases (*see* Exs. 4-6 (GPWR, Rosen and Carella Byrne firm résumés)); *see also In re Eros Int'l plc Sec. Litig.*, 2023 WL 8527135, at *2 (D.N.J.

Nov. 28, 2023) (appointing GPWR and Carella Byrne class counsel in securities class action); *Fernandez*, 2025 WL 972836, at *6 ("Class counsel, the Rosen Law Firm and GPM, are well-experienced and knowledgeable in the area of class action securities litigation"). And, as noted above, Plaintiffs' Counsel have vigorously prosecuted the Settlement Class's claims throughout the litigation by, *inter alia*: conducting an extensive investigation of the claims alleged through a detailed review of publicly available documents; contacting and interviewing former Company employees; drafting the detailed amended complaints; fully briefing multiple motions to dismiss and conducting extensive research and submitting multiple letter briefs regarding complex legal issues; and obtaining the $6,500,000 Settlement for the benefit of the Settlement Class through an adversarial mediation process. *Fernandez*, 2025 WL 972836, at *6.

### 2. The Settlement is the Result of Good Faith Arm's Length Negotiations by Informed Counsel Who Were Aware of the Risks of the Litigation

Courts next consider whether the settlement was "negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B); *see also In re Viropharma Inc. Sec. Litig.*, 2016 WL 312108, at *8 (E.D. Pa. Jan. 25, 2016) (the "participation of an independent mediator in settlement negotiations virtually insures [*sic*] that the negotiations were conducted at arm's length and without collusion between the parties"). Here, as set forth in detail above, the Parties engaged in a substantive settlement conference with Judge

Hammer. The arm's-length nature of the settlement negotiations, and the involvement of a judge with extensive experience overseeing complex matters and settlement negotiations, support the conclusion that the Settlement is fair and was achieved free of collusion. *See, e.g., Alves v. Main*, 2012 WL 6043272, at *22 (D.N.J. Dec. 4, 2012) ("The participation of an independent mediator in settlement negotiations virtually insures that the negotiations were conducted at arm's length and without collusion between the parties."); *see also Lusk v. Five Guys Enters. LLC*, 2022 WL 4791923, at *9 (E.D. Cal. Sept. 30, 2022) ("The fact . . . that the Settlement is based on a mediator's proposal further supports a finding that the settlement agreement is not the product of collusion.").

**3. The Settlement is an Excellent Result of the Settlement Class Considering the Benefits of the Settlement and the Risks of Continued Litigation**

Under Rule 23(e)(2)(C), when evaluating the fairness, reasonableness, and adequacy of a settlement, the Court must also consider whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal" along with other relevant factors. Fed. R. Civ. P. 23 (e)(2)(C). Each of these factors support the Settlement's approval.

**(a) Complexity, Expense, and Duration of Litigation**

The first *Girsh* factor – the complexity, expense, and likely duration of litigation – favors approval. Indeed, "[s]ecurities fraud cases are notably complex,

lengthy, and expensive cases to litigate." *Fernandez*, 2025 WL 972836, at *9; *see also Beltran*, 2023 WL 319895, at *4 (same). This case was no exception. The case has been pending for more than five years, and it was still at the pleading stage with many unresolved and complex legal and factual issues still unresolved. Thus had the case proceeded, "it would have much farther to go, potentially involving motions to dismiss, discovery, depositions, summary judgment, pre-trial motions, trial, and post-trial appeals." *Beltran*, 2023 WL 319895, at *4. "As such, if litigation continued, and if Plaintiffs recovered at all, they likely would not recover for many years." *Id*.

Adding to the inherent complexities of the Action as a securities case was the international dimensions of the litigation. "[T]he individual Defendants and most witnesses live in China," much of the evidence "exists in China and is written in Chinese," and "the Chinese government restricts production of evidence to foreign parties and prohibits taking depositions on the Mainland, forcing any potential depositions to take place in Hong Kong." *Id*. This would "would significantly increase the complexity and expense of the litigation." *Id*.; *see also Fernandez*, 2025 WL 972836, at *9 ("The fact that Defendants in this matter are based in China will necessarily complicate this case."). As a result, "all these facts add to what could become a tremendously complex and expensive suit." *Beltran*, 2023 WL 319895, at *4.

**(b) Risks of Establishing Liability and Damages**

The risks of establishing liability and damages are also factors that favor approval. "Courts commonly analyze the fourth and fifth *Girsh* factors together." *Fernandez*, 2025 WL 972836, at *11; *Beltran* 2023 WL 319895, at *5. First, "[e]stablishing liability is a common risk of securities litigation." *Fernandez*, 2025 WL 972836, at *11; *Beltran*, 2023 WL 319895, at *5. While Plaintiffs and their counsel believe that the claims asserted against Defendants are meritorious, they recognize that this Action presented several substantial risks to establishing both liability and damages. Indeed, had the Action continued, Plaintiffs would have needed to obtain information in discovery to prove their claims, and Defendants would have challenged the sufficiency of Plaintiffs' evidence at the pleading stage, in a motion for summary judgment, and at trial. Specifically, in addition to having to establish tracing for their Securities Act claims, Plaintiffs would have to prove each of the following elements: (i) falsity (*i.e.*, that the Defendants made false and/or misleading statements); (ii) materiality (that the Defendants made false statements about a material fact); (iii) scienter for their Exchange Act claims (that there was a strong, or cogent inference that the Defendants made such materially false statements on purpose, or recklessly); (iv) loss causation for their Exchange Act claims (that the Defendants' materially false statements proximately caused the

decline in the Company's stock price); and (v) damages. Defendants, on the other hand, need only negate one element for Plaintiffs and the class to lose.

Second, "[g]iven that much of the evidence Plaintiffs need is in China, this further complicates Plaintiffs' chances of success." *Beltran*, 2023 WL 319895, at *5; *Fernandez*, 2025 WL 972836, at *11. And "[e]ven if Plaintiffs were to ultimately succeed on the merits" there is a "valid concern about their ability to collect on the judgment in China, where U.S. judgments are generally not enforceable." *Fernandez*, 2025 WL 972836, at *11. Thus, when compared to the certainty of the significant, immediate benefit conferred by the Settlement, these risks militate against further litigation and support preliminary approval.

**<u>Establishing Liability</u>**: This Court's decision dismissing Plaintiffs' first amended complaint demonstrates this case was far from a "slam dunk." *See In re Xcel Energy, Inc. Sec., Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980, 1003 (D. Minn. 2005) ("The court needs to look no further than its own order dismissing the … litigation to assess the risks involved."). Moreover, Plaintiffs still needed to *prove* their case, and documents and deposition testimony may have supported Defendants' narrative of the case. Although Plaintiffs have built a strong case, there is simply no guarantee that that the evidence would support Plaintiffs' theory.

First, Defendants argued – and would have continued to argue – that Plaintiffs would not have been able to establish standing for their Securities Act claims. Had

the Court accepted Defendants' arguments – and the Court did so with respect to Plaintiffs' previous complaints – then Plaintiffs would not have been able to recover for their claims under the Securities Act.

Second, Defendants argued – and would have continued to argue – that Plaintiffs would not have been able to establish liability. For example, Defendants asserted that Plaintiffs failed to plead an actionable misstatement or omission because: (1) the risks Plaintiffs claim were omitted were purportedly fully disclosed; and (2) Plaintiffs purportedly failed to allege an illegal scheme to establish liability.

Third, Defendants argued – and would have continued to argue – that Plaintiffs would not have been able to establish scienter for their Exchange Act claims. For example, Defendants asserted that Plaintiffs failed to allege motive and opportunity and failed to allege sufficient facts constituting conscious misbehavior or recklessness. Finally, Defendants would have argued that there were significant issues that would have prevented class certification.

The resolution of these issues would largely depend on the fruits of discovery, and success was not a forgone conclusion. *See Gross v. GFI Group, Inc.*, 784 F. App'x. 27, 28 (2d Cir. 2019) (affirming grant of summary judgment against plaintiffs in securities fraud class action on the alternative ground that Defendant's "statement did not, as a matter of law, amount to a material misrepresentation or omission actionable under section 10(b)," despite District Court twice finding the

statement actionable); *see also Christine Asia Co., Ltd. v. Yun Ma*, 2019 WL 5257534, at *12 (S.D.N.Y. Oct. 16, 2019) ("Proving scienter is hard to do.").

**Risks Related to Causation and Damages**: Although Plaintiffs were confident that they could establish damages assuming a finding of liability, Plaintiffs faced a risk that the Court or jury would substantially reduce or even eliminate damages. Indeed, "proving damages in securities fraud cases is always difficult and invariably requires expert testimony which may, or may not be, accepted by a jury." *Beltran*, 2023 WL 319895, at *5; *In re Indep. Energy Holdings PLC Sec. Litig.*, 2003 WL 22244676, at *3 (S.D.N.Y. Sept. 29, 2003). And "[a] battle of the experts at trial can go either way." *Beltran*, 2023 WL 319895, at *5; *In re Datatec Sys., Inc. Sec. Litig.*, 2007 WL 4225828, at *4 (D.N.J. Nov. 28, 2007).

For example, Defendants argued – and would have continued to argue – that Plaintiffs would not have been able to establish loss causation for their Exchange Act claims. Specifically, Defendants contended that 9F's stock price did not fall the first two times it disclosed its dispute with PICC and that Defendants' disclosures did not reveal any illegal scheme between 9F and PICC. While Plaintiffs believed they had the stronger argument, the issue still presented very real risks. *See Christine Asia Co., Ltd. v. Yun Ma*, 2019 WL 5257534, at *13 (S.D.N.Y. Oct. 16, 2019) ("While Plaintiffs proceeded as though they had the better arguments, the risk remained that Defendants could have defeated loss causation, or significantly

diminished damages, for the one remaining alleged corrective disclosure date."); *see also Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (overturning jury verdict of $81 million for plaintiffs against an accounting firm on loss causation grounds and entering judgment for defendants).

**<u>Post-Trial/Appellate Risk</u>**: Even if Plaintiffs were to obtain 100% of the damages alleged, the risks would not end there. There are numerous cases in which a successful verdict has been overturned either by motion after trial or on appeal. In *In re Apple Comput. Sec. Litig.*, 1991 WL 238298, at *1 (N.D. Cal. Sept. 6, 1991), for example, the jury rendered a verdict for plaintiffs after an extended trial. Based upon the jury's findings, recoverable damages would have exceeded $100 million. The court, however, overturned the verdict, entered judgment for the individual defendants, and ordered a new trial with respect to the corporate defendant. *See also Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408, 433 (7th Cir. 2015) (reversing and remanding jury verdict of $2.46 billion after 13 years of litigation on loss causation grounds and error in jury instruction under *Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135 (2011)); *In re BankAtlantic Bancorp, Inc.*, 2011 WL 1585605, at *20 (S.D. Fla. Apr. 25, 2011) (after plaintiffs' jury verdict, court granted defendants' motion for judgment as a matter of law and entered judgment for defendants), *aff'd on other grounds*, 688 F.3d 713 (11th Cir. 2012)

(finding trial court erred, but defendants nevertheless entitled to judgment based on lack of loss causation).

### (c) Risks of Maintaining Class Action Status

While Plaintiffs and their counsel are confident that the Settlement Class meets the requirements for certification, a class has not yet been certified. Even if the Court were to certify a class, there is always a risk that it could be decertified at a later stage. *See Ark. Teacher Ret. Sys. v. Goldman Sachs Grp., Inc.*, 77 F.4th 74 (2d Cir. 2023) (decertifying a class of investors after 12 years of litigation); *Chatelain v. Prudential-Bache Sec., Inc.*, 805 F. Supp. 209, 214 (S.D.N.Y. 1992) ("Even if certified, the class would face the risk of decertification."). Thus, Plaintiffs "would need to maintain class certification throughout the length of the suit, and Defendants could challenge certification and move to decertify at any point." *Beltran*, 2023 WL 319895, at *5. "This adds more expense to the overall cost of the suit, as well as more risk to the Plaintiffs' overall chance of success" while "[a] settlement avoids those issues." *Id.*

### (d) Range of Reasonableness Considering the Best Possible Recovery and Attendant Risks of Litigation

Here, the proposed Settlement provides a cash payment of $6.5 million. This is a highly favorable result considering the significant risks of continued litigation as set forth herein. Plaintiffs' damages expert estimates that *if* Plaintiffs had fully prevailed on all their claims at summary judgment and after a jury trial, *if* the Court

certified the same class period as the Settlement Class Period, and *if* the Court and jury accepted Plaintiffs' damages theory, *i.e.*, Plaintiffs' *best case scenario*, the total *maximum* damages *potentially* available in this Action would be approximately $213 million. However, depending on the methodology used, and if only the Exchange Act claims survived, maximum potential damages would have been reduced to $48 million. The Settlement thus represents a recovery of between 13.5% to 3.1% of maximum potential damages, which exceeds the median recovery of estimated damages in securities class action settlements during the past decade in cases with similar damages. *See* Ex. 2 (Recent Trends in Securities Class Action Litigation: 2025 Full-Year Review, at 27, Fig. 23 (NERA Jan. 21, 2026) (median recovery for securities class actions that settled in the last ten years was 5.2% for cases with estimated damages between $20-$49 million, and 2.7% for cases with estimated damages between $200-$399 million)).

Of course, no litigation is risk free. If, for example, Defendants were to prevail on their arguments, damages would have been greatly reduced or eliminated. And, even if Plaintiffs were successful at trial, Defendants could have challenged the damages of each class member in post-trial proceedings, substantially reducing any aggregate recovery. *See In re Signet Jewelers Ltd. Sec. Litig.*, 2020 WL 4196468, at *5 (S.D.N.Y. July 21, 2020) ("In the absence of the Settlement, the continued litigation of the Action likely would have required the Parties to . . . submit

post-trial motions, including a contested individual claims procedure"); *see also In re Vivendi Universal, S.A. Sec. Litig.*, 284 F.R.D. 144, 155 (S.D.N.Y. 2012) (establishing a preliminary framework for a post-trial claims administration whereby class members could submit claims against Vivendi and Vivendi could interpose individualized challenges, including on the basis of a claimant's lack of reliance or damages). In sum, the risks posed by continued litigation were substantial, and they would be present at every step of the litigation if it were to continue. Accordingly, this factor weighs in favor of approving the Settlement. *See In re Mfrs. Life Ins. Co. Premium Litig.*, 1998 WL 1993385, at *5 (S.D. Cal. Dec. 21, 1998) ("[E]ven if it is assumed that a successful outcome for plaintiffs at summary judgment or at trial would yield a greater recovery than the Settlement - which is not at all apparent - there is easily enough uncertainty in the mix to support settling the dispute rather than risking no recovery in future proceedings.").

**(e) Rule 23(e)(2)(C)**

Under Rule 23(e)(2)(C), courts also must consider whether the relief provided for the class is adequate in light of "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;" "the terms of any proposed award of attorney's fees, including timing of payment;" and "any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv). Each of these factors either supports approval of the

Settlement or is neutral and does not suggest any basis for inadequacy of the Settlement.

**Rule 23(e)(2)(C)(ii)**: The method for processing Settlement Class Members' claims and distributing relief to eligible claimants includes well-established, effective procedures for processing claims and efficiently distributing the Net Settlement Fund. The Claims Administrator will process claims under Lead Counsel's guidance, allow Claimants an opportunity to cure claim deficiencies or request the Court to review their claim denial, and mail Authorized Claimants their *pro rata* share of the Net Settlement Fund (per the Plan of Allocation), after Court approval. This proposed claims-processing method is standard in securities class action settlements as it has been long found to be effective, as well as necessary, as neither Plaintiffs nor Defendants possess the individual investor trading data required to distribute the Net Settlement Fund on a claims-free basis. *See In re Eros Int'l plc Sec. Litig.*, No. 2:19-cv-14125, ECF No. 85 (D.N.J. July 11, 2023), (order preliminarily approving securities class action settlement with substantially similar claims process) (Ex. 3); *Becker v. Bank of New York Mellon Trust Co., N.A.*, 2018 WL 6727820, at *7 (E.D. Pa. Dec. 21, 2018) ("The requirement that class members submit documentation to substantiate their holdings . . . will facilitate the filing of legitimate claims, yet is not overly demanding given the range of permissible documentation.").

**<u>Rule 23(e)(2)(C)(iii)</u>**: As disclosed in the Notice, Lead Counsel will be applying for a percentage of the common fund fee award on behalf of all Plaintiffs' Counsel, in an amount not to exceed 33⅓% to compensate them for the services they rendered on behalf of the Settlement Class. The proposed attorneys' fee of up to 33⅓% of the Settlement Fund (which, by definition, includes interest earned on the Settlement Amount) is reasonable considering the work performed and the results obtained. It is also consistent with awards in similar complex class action cases. *See, e.g., Beltran*, 2023 WL 319895, at *8 (holding that a fee award "equating to one-third of the Settlement Fund, is well within the typical range and is reasonable"). More importantly, approval of the requested attorneys' fees is separate from approval of the Settlement, and the Settlement may not be terminated based on any ruling regarding attorneys' fees. Stipulation, ¶16.

#### (f) The Settlement Treat All Members of the Settlement Class Equitably Relative to Each Other

Rule 23(e)(2)(D) requires courts to evaluate whether the settlement treats class members equitably relative to one another. The Settlement easily satisfies this standard. Under the proposed Plan of Allocation, each Authorized Claimant will receive his, her, or its *pro rata* share of the Net Settlement Fund. Specifically, an Authorized Claimant's *pro rata* share shall be the Authorized Claimant's Recognized Claim divided by the total of Recognized Claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund. Courts have

repeatedly approved similar plans. *See Kanefsky v. Honeywell Int'l Inc.*, 2022 WL 1320827, at *6 (D.N.J. May 3, 2022) (finding plan of allocation fair, reasonable, and adequate where each claimant would be "reimbursed based on a *pro rata* share" of the settlement based upon "each [c]laimant's loss").

**(g) The Remaining *Grish* Factors Either Weigh in Favor of Preliminary Approval or Are Neutral**

The remaining *Girsh* factors either weigh in favor of approval or are neutral. For example, "[t]he third *Girsh* factor considers the stage of proceedings and quantity of discovery." *Fernandez*, 2025 WL 972836, at *10. Here, "[t]he parties have not engaged in formal discovery because, pursuant to the PSLRA, discovery is stayed while a motion to dismiss is pending." *Id.* Nevertheless, the Action has been pending for more than five years, and during that time, Plaintiffs "extensively studied the merits of the case by conducting investigations, analyzing SEC filings and analyst reports, reviewing Chinese regulatory filings . . . interviewing former [company] employees . . . and consulting with an economics expert on damages." *Id.* Thus, this factor also weighs in favor of approval. *See id.* ("although there was no formal discovery, the Court is satisfied that counsel fully researched the claims, conducted a diligent investigation and was educated on the amount of potential damages at stake in this litigation.").

Similarly, the ability of Defendants to withstand a greater judgment also favors approval or is neutral. "This factor is concerned with whether the defendants

could withstand a judgment for an amount significantly greater than the settlement." *Id*. at *12. Here, it is unclear whether the Company could withstand a larger judgment many years in the future. However, "the relative financial resources of a defendant do not themselves render a settlement unreasonable." *Id*.; *see also Oliver v. BMW of N.A., LLC*, 2021 WL 870662, at *8 (D.N.J. Mar. 8, 2021); *Yaeger v. Subaru of Am.*, 2016 WL 4541861, at *11 (D.N.J. Aug. 31, 2016). Thus, "the fact that [defendant] could afford to pay more does not mean that it is obligated to pay any more than what the . . . class members are entitled to under the theories of liability that existed at the time the settlement was reached." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 538 (3d Cir. 2004). Thus, this factor is neutral.

### B. Certification of the Settlement Class for Settlement Purposes is Appropriate

Courts have long acknowledged the propriety of certifying a class solely for purposes of settlement. *See, e.g.*, *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619-22 (1997); *see also Pozzi v. Smith*, 952 F. Supp. 218, 221 (E.D. Pa. 1997) ("The Third Circuit has declared that class actions created for the purpose of settlement are recognized under the general scheme of Federal Rule of Civil Procedure 23, provided that the class meets the certification requirements under the Rule."). Here, the requirements under Rule 23(a) and Rule 23(b)(3) are satisfied.

#### 1. The Settlement Class Satisfies the Requirement of Rule 23(a)

**Numerosity**: To satisfy Rule 23(a)(1)'s numerosity requirement, the proposed class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "[C]ourts in this Circuit have recognized a presumption that the numerosity requirement is satisfied when a class action involves a nationally traded security." *Fernandez*, 2025 WL 972836, at *4. Here, Plaintiffs' consulting damages expert estimates that there were approximately 68 million damaged shares as a result of the alleged wrongdoing in the Action. Thus, while the precise number of Settlement Class Members cannot be identified, it is likely to be in the thousands. Under such circumstances, numerosity is presumed.

**Common Questions**: Rule 23(a)(2)'s commonality requirement is met where there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This requirement is "not particularly demanding," *City of Sterling Heights Gen. Emps.' Ret. Sys. v. Prudential Fin., Inc.*, 2015 WL 5097883, at *8 (D.N.J. Aug. 31, 2015), and is satisfied where the proposed class representative shares "at least one question of fact or law with the grievances of the prospective class." *Reyes v. Netdeposit, LLC*, 802 F.3d 469, 486 (3d Cir. 2015). Here, questions of law and fact regarding Plaintiffs' claims will be common to the class, including, but not limited to: (1) whether Defendants' representations to the investing public were materially false and misleading; (2) whether Defendants acted with scienter with respect to

Plaintiffs' Exchange Act claims; and (3) whether Defendants' representations caused losses for Plaintiffs and the Settlement Class. These questions are susceptible to common answers since their resolution does not differ based on the plaintiff's identity. Because these questions of law and fact are common to all members of the Settlement Class, the commonality requirement of Rule 23(a)(2) is met. *Fernandez*, 2025 WL 972836, at *5.

**Typicality**: When "the claims or defenses of the representative parties are typical of the claims or defenses of the class," the typicality requirement is met. Fed. R. Civ. P. 23(a)(3). This requirement requires only that "the claims of the named plaintiffs and putative class members involve the same conduct by the defendant." *Prudential*, 2015 WL 5097883, at *9. Rule 23(a)(3) "does not require that the putative class members all share identical claims." *Roofer's Pension Fund v. Papa*, 333 F.R.D. 66, 75 (D.N.J. 2019). Here, Plaintiffs' claims are typical of the Settlement Class because their claims are based on Defendants' alleged misrepresentations and omissions during the Settlement Class Period. Thus, any Settlement Class Member's claim arising from these misrepresentations will necessarily rely on the same course of events. *Fernandez*, 2025 WL 972836, at *5-6.

**Adequacy**: As explained above, Plaintiffs and their counsel have, and will continue to, adequately represent the proposed Settlement Class.

### 2. The Settlement Class Satisfies the Requirements of Rule 23(b)(3)

Rule 23(b)(3) authorizes class certification if "questions of law or fact common to class members predominate over any questions affecting only individual members, and … a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Settlement Class meets both requirements.

**Common Questions Predominate**: Where common questions of fact or law outnumber those affecting only individual class members, predominance is satisfied. *Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 371 n.7 (3d Cir. 2015). This requirement is "readily met" in securities fraud cases. *Amchem*, 521 U.S. at 625. Here, Plaintiffs and the Settlement Class would establish Defendants' liability by proving that Defendants made misrepresentations during the Settlement Class Period. The evidence needed to prove these claims would be the same for all Settlement Class members, a fact that strongly favors a finding of predominance. *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466-67 (2013). Moreover, affirmative defenses are also subject to general proof, including causation-based defenses. *See In re Merck & Co. Sec. Litig.*, 432 F.3d 261, 274 (3d Cir. 2005) ("[D]efendants can limit damages by showing that the plaintiffs' losses were caused by something other than their misrepresentations."). Because these questions, among others, would be identical for each Settlement Class member, as

would be the evidence necessary to answer them, the predominance requirement is met. *Fernandez*, 2025 WL 972836, at *7.

**Class Action Is Superior**: Rule 23(b)(3) sets forth non-exhaustive factors to be considered in determining whether class certification is the superior method of litigation: "(A) the class members' interests in individually controlling the prosecution . . . of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by . . . class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." *See* Fed. R. Civ. P. 23(b)(3). Superiority "is easily satisfied in securities fraud cases where there are many individual plaintiffs who suffer damages too small to justify a suit against a large corporate defendant." *In re Heckmann Corp. Sec. Litig.*, 2013 WL 2456104, at *8 (D. Del. June 6, 2013). Indeed, "a class action is certainly the superior method for adjudicating" securities fraud claims because "[g]enerally, as a practical matter, investors defrauded by securities law violations have no recourse other than class relief." *Papa*, 333 F.R.D. at 78; *Fernandez*, 2025 WL 972836, at *7.

Here, there is no evidence that putative class members desire to bring separate individual actions, and the Parties are unaware of any individual litigation involving the same issues. Furthermore, it is desirable to concentrate the claims in this Court as the Company's ADSs traded on NASDAQ, and the Court is already familiar with

the case. Finally, because this is a request for class certification for settlement purposes only, the Court need not inquire as to whether the case, if tried, would present management problems. *Amchem*, 521 U.S. at 620.

**3. The Court Should Appoint Lead Counsel as Counsel for the Settlement Class**

A court that certifies a class must also appoint class counsel. *See* Fed. R. Civ. P. 23(g). The Rule directs the Court to consider: "(1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A).

GPWR (previously GPM) was appointed Lead Counsel, and Carella Byrne was appointed Liaison Counsel, on October 13, 2021 (ECF Doc. No. 19). Since that time, GPWR and Carella Byrne have devoted substantial time, effort, and resources to identifying, investigating, litigating, and settling the claims in this matter. Moreover, as explained above, GPWR and Carella Byrne have substantial experience prosecuting securities class actions. For these reasons, among others, Plaintiffs respectfully request that the Court appoint GPWR to serve as Class Counsel and Carella Byrne as Liaison Counsel for the Settlement Class.

### C. The Court Should Approve the Proposed Form and Method of Notice

As outlined in the proposed Preliminary Approval Order, if the Court grants preliminary approval, the Claims Administrator will mail, by first-class mail, individual copies of the Postcard Notice (Ex. A-4 to the Stipulation), or email a link to the Notice (Ex. A-1 to the Stipulation) and Claim Form (Ex. A-2 to the Stipulation, and together with the Notice, the "Notice Packet"), to all potential Settlement Class Members who can be identified with reasonable effort, as well as brokerage firms and other nominees who act as nominees for beneficial purchasers.

Contemporaneously with the mailing of the Postcard Notice and emailing of the Notice Packet, copies of the Notice and the Claim Form will be posted on a website to be developed for the Settlement. From this website, potential Settlement Class Members will be able to download copies of the Notice and Claim Form and submit claims online.[5] The Notice will advise Settlement Class Members of: (i) the pendency of the class action; (ii) the essential terms of the Settlement; and (iii) information regarding Lead Counsel's application for attorneys' fees and expenses. The Notice also will provide specific details on the date, time and place of the Settlement Hearing and the procedures for objecting to the Settlement, the proposed Plan of Allocation, and/or the application for attorneys' fees and expenses, and for

[5] Upon request, the Claims Administrator will also mail copies of the Notice and/or Claim Form.

requesting exclusion from the Settlement Class. In addition to mailing the Postcard Notice, the Summary Notice (Ex. A-3 to the Stipulation) will be published once in *Investor's Business Daily* and transmitted once over the *PR Newswire*. It is "more than sufficient" to use "a combination of a mailed post card [sic] directing class members to a more detailed online notice." *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 182 n.3 (S.D.N.Y. 2014) (citing cases). Thus, Plaintiffs respectfully submit that the proposed notice and related procedures are appropriate and should be approved.

## V. PROPOSED SCHEDULE OF EVENTS

Plaintiffs respectfully propose the schedule set forth below for Settlement-related events. The timing of events is determined by the date the Preliminary Approval Order is entered and the date the Settlement Hearing is scheduled. If the Court agrees with the proposed schedule, Plaintiffs request that the Court schedule the Settlement Hearing for a date at least 120 calendar days after the entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter.

| Event | Proposed Timing |
|---|---|
| Deadline for mailing the Postcard Notice or emailing a link to the Notice and Claim Form to Settlement Class Members (which date shall be the "Notice Date") (Prelim. Appr. Order ¶7(b)) | Not later than 20 business days after entry of Prelim. Appr. Order |
| Deadline for publishing the Summary Notice (Prelim. Appr. Order ¶7(d)) | Not later than 10 business days after the Notice Date |

| Event | Proposed Timing |
|---|---|
| Deadline for filing of papers in support of final approval of the Settlement, Plan of Allocation, and Lead Counsel's application for attorneys' fees and expenses (Prelim. Appr. Order ¶26) | Not later than 35 calendar days prior to the Settlement Hearing |
| Deadline for receipt of exclusion requests and objections (Prelim. Appr. Order ¶¶13, 16) | Not later than 21 calendar days prior to the Settlement Hearing |
| Deadline for filing reply papers (Prelim. Approval Order ¶26) | 7 calendar days prior to the Settlement Hearing |
| Deadline for submitting Claim Forms (Prelim. Appr. Order ¶10) | 120 calendar days after the Notice Date |
| Settlement Hearing | Not earlier than 120 calendar days after entry of the Prelim. Appr. Order, or at the Court's earliest convenience thereafter |

## VI. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant the requested relief.

Dated: October 21, 2026

Respectfully submitted,

**CARELLA, BYRNE, CECCHI, BRODY & AGNELLO, P.C.**

*/s/ James E. Cecchi*
James E. Cecchi
Donald A. Ecklund
Kevin G. Cooper
5 Becker Farm Road
Roseland, New Jersey 07068
Telephone: (973) 994 -1700
Email: jcecchi@carellabyrne.com
Email: decklund@carellabyrne.com
Email: kcooper@carellabyrne.com

*Liaison Counsel for Plaintiffs and the Proposed Settlement Class*

**GLANCY PRONGAY WOLKE & ROTTER LLP**
Ex Kano S. Sams II
Charles H. Linehan
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Email: esams@glancylaw.com
Email: clinehan@glancylaw.com

*Lead Counsel for Plaintiffs and the Proposed Settlement Class*

**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen
Jing Chen
One Gateway Center, Suite 2600
Newark, New Jersey 07102
Telephone: (973) 313-1887
Email: lrosen@rosenlegal.com
Email: jchen@rosenlegal.com

**LAW OFFICES OF HOWARD G. SMITH**
Howard G. Smith
3070 Bristol Pike, Suite 112
Bensalem, PA 19020
Telephone: (215) 638-4847
Facsimile: (215) 638-4867

*Additional Counsel for Plaintiffs and the Proposed Settlement Class*

**PROOF OF SERVICE**

I hereby certify that on this 21st day of October, 2026, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

*/s/James E. Cecchi*
James E. Cecchi